John J. Hebert (#010633)
Mark W. Roth (#010708)
Philip R. Rudd (#014026)
**POLSINELLI SHUGHART PC**
3636 North Central Avenue, Suite 1200
Phoenix, AZ 85012
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: prudd@polsinelli.com
*Proposed Attorneys for the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>RCC NORTH, LLC<br>                Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:10-bk-11078-SSC<br><br>**MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL** |

RCC North, LLC ("Debtor"), debtor and debtor-in-possession herein, by and through undersigned counsel, pursuant to 11 U.S.C. §363(c) and Rules 4001(b) and 9014, Federal Rules of Bankruptcy Procedure, hereby requests that the Court enter its order authorizing the Debtor to use rents and other income generated by the Debtor's property to pay for the Debtor's ordinary and necessary operating and reorganization expenses as set forth in the proposed ninety (90) day budget attached hereto as Exhibit "A" (the "Budget"). In support of this "Motion for Authorization to Use Cash Collateral" ("Cash Collateral Motion"), the Debtor states as follows:

**JURISDICTION AND VENUE**

This Court has jurisdiction over this case pursuant to 28 U.S.C. §1334. The subject matter of this motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper under 28 U.S.C. § 1408.

**FACTUAL BACKGROUND**

1. The Debtor is a Delaware corporation authorized to do and doing business in the State of Arizona.

2. The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy

1

2670146.1

Code, on April 15, 2010 (the "Petition Date").

3. The Debtor is operating its business and managing its assets as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.[1]

4. The Debtor owns and operates two Class "A" office buildings and the related corporate campuses known as Phase I and Phase II of the Raintree Corporate Center located north of the northeast corner of Loop 101 (Pima Freeway) and Raintree Drive, at 15333 North Pima Road and 15111 North Pima Road, respectively, in Scottsdale, Arizona (the "Property"). Each three-story building is approximately 150,000 square feet and was built in 2001.

5. Phase I of the Property is currently occupied by 27 tenants in approximately 89,515 square feet of the building. Thus, Phase I of the Property is approximately 60% occupied.

6. Phase II of the Property is currently occupied by 4 tenants in approximately 59,297 square feet of the building. Thus, Phase II of the Property is approximately 40% occupied. Notably, Phase II of the Property was previously fully occupied by Pulte Homes. However, in the Fall of 2009, Pulte Homes vacated the Property by exercising an early termination right in its lease and paying an early termination fee of approximately $2.1 million to the Debtor. The Debtor previously delivered a portion of these fees to US Bank (defined below). In fact, the Debtor is informed and believes that a substantial portion of these funds—approximately $1.5 million—is currently held by US Bank or its servicer(s) in a reserve account, and the Debtor may seek authority to use such funds for future tenant improvements and/or leasing commissions.

7. The Property is managed by Cavan Property Management, a well-respected, established manager of commercial real properties throughout the Valley.

8. U.S. Bank, N.A., as trustee for the Registered Holders of Merill Lynch Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1 ("US Bank"), has asserted a claim against the Debtor, allegedly secured by the Property, in the amount of approximately $57.5 million.

9. US Bank noticed a trustee's sale with respect to the Property for April 16, 2010.

---

[1] Unless otherwise indicated, all references to code sections herein shall be to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

2

2670146.1

Despite the Debtor's best efforts to negotiate a resolution of US Bank's asserted claims against the Debtor, the Debtor was unable to reach an agreement with US Bank and filed its voluntary petition for relief on the Petition Date in order to reorganize and restructure its debts and liabilities for the benefit of all parties-in-interest.

10. In order to continue operating and maintaining the Property during the pendency of this Chapter 11 case for the benefit of all creditors and parties-in-interest, it is necessary for the Debtor to use the rental and other income from the Property to pay for the ordinary and necessary operating and reorganization expenses of the Property and the Debtor.

11. The Debtor's projected income and expenses for the next ninety (90) days (*i.e.*, through July 2010) are identified in the Budget that is attached hereto as Exhibit "A."

12. As reflected in the Budget, the Debtor's income includes base rental income from tenants of the Property, parking rent, business center revenue, common area maintenance income, and utility reimbursement income (collectively, the "Income").

13. Also as reflected in the Budget, the Debtor's expenses include utility expenses, maintenance, janitorial and repair expenses, ordinary and customary property management fees, ordinary and customary asset management fees, anticipated tenant improvement expenses, United States Trustee's fees, and certain bankruptcy related professional fees (which, of course, will not be paid absent an appropriate order of this Court) (collectively, the "Expenses"). The Expenses in the Budget also include a miscellaneous expense line item to allow the Debtor certain flexibility in connection with the operational expenses of the Property.

14. Upon information and belief, US Bank asserts a lien in the rental and other income generated by the Property, and that such income constitutes its "cash collateral" as defined in 11 U.S.C. §363. The Debtor has not had sufficient time to determine the validity, priority, enforceability, and/or extent of US Bank's asserted lien. Accordingly, the Debtor reserves all rights with respect thereto.

15. No formal creditor's committee has yet been formed.

16. The Debtor proposes to use the Income to pay the Expenses in accordance with the Budget, with a ten percent (10%) variance of the total Budget.

2670146.1

17. It is crucial for the Debtor to have the use of the Income to operate, maintain and preserve the Property in order to, among other things, (a) maintain tenant relations and comply with its obligations as a landlord to the Property's tenants, (b) continue marketing the Property to prospective tenants in order to improve the Property's cash flow, and (c) preserve the going concern value of the Property while the Debtor formulates and implements a plan of reorganization.

18. The Debtor believes that its business operations and reorganization efforts will suffer immediate and irreparable harm if it is not allowed to use the Income to pay the Expenses. Indeed, the value of the Property will decline if the Expenses are not paid.

19. To the extent that the Property generates Income in excess of the Expenses, as the Budget reflects, the Debtor will hold and sequester such excess Income, subject to whatever rights US Bank has in the Income pursuant to its liens.

## LEGAL ANALYSIS

Pursuant to 11 U.S.C. §363(c)(2), the Debtor may use cash collateral if the entity holding an interest in such cash collateral consents or, if after notice and a hearing, the Court authorizes its use. Where an entity objects to the use of cash collateral, the Court still may permit its use by the Debtor upon a showing that the rights of the objecting party are adequately protected. 11 U.S.C. §363(e); See Collier on Bankruptcy §363.04, 15th Ed., 1989.

Section 361 of the Bankruptcy Code specifies three means of proving adequate protection; however, as indicated in the legislative history to that section, such means are "neither exclusive nor exhaustive." Generally, the "interest in property sought to be protected under Code § 361 is the value of the secured creditor's collateral during the interim period between the filing of the petition and confirmation of a plan of reorganization, or dismissal of the case." *In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. 53, 57 (Bankr. N.D.N.Y. 1992) (citation omitted).

Thus, courts have consistently found that a debtor's use of cash collateral to pay the reasonable and necessary operating expenses of the debtor's property, by itself, satisfies the "adequate protection" requirement of § 363(c)(2). *See e.g. In re R&G Properties, Inc.*, 2009 WL 2043875 at *6 (Bankr. D. Vermont 2009) (and cases cited therein); *In re Princeton Square Associates, L.P.*, 201 B.R. 90, 96 (Bank S.D.N.Y. 1996) ("The use of rents by a debtor in

possession to maintain the property to the same extent that receiver of rents would use the rents does no economic harm to the lender . . . . Adequate protection is required for the 'use' of the secured creditor's collateral. In the context of rents, this court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents."); *499 W. Warren Street Associates,* 142 B.R. at 56-57 ("Under appropriate circumstances, use of a portion of the rental income to pay the reasonable and necessary operating expenses of the property satisfies [the adequate protection requirement].").

Here, US Bank is protected from any risk by the use of the Income to pay the Expenses. The use of the Income to operate and maintain the Property will protect US Bank's interest in the Property and will protect against a decrease in the value of the Property. Therefore, US Bank is adequately protected, and the Debtor should be permitted to use the Income from the Property to pay the Property's and the Debtor's Expenses associated with maintaining, preserving and improving the Property.

Based on the foregoing, the Debtor respectfully requests that the Court enter its order authorizing the Debtor to use the Income to pay the Expenses in accordance with the Budget, with a ten percent (10%) variance, for the next ninety (90) days, with the right to seek additional use of the Income after the expiration of such period.

RESPECTFULLY SUBMITTED: April 27, 2010.

POLSINELLI SHUGHART PC

By: _____
John J. Hebert
Mark W. Roth
Philip R. Rudd
Security Title Plaza
3636 N. Central Ave., Suite 1200
Phoenix, AZ 85012
*Attorneys for the Debtor*

2670146.1

5

| | | |
|---|---|---|
| 1<br>2 | **COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on April 27, 2010, to: | |
| 3 | U.S. TRUSTEE'S OFFICE | Richard Lorenzen * rlorenzen@perkinscoie.com |
| 4 | * USTpRegion14.px.ecf@usdoj.gov<br>230 N. 1st Avenue, Suite 204 | PERKINS COIE BROWN & BAIN, P.A.<br>2901 N. Central Ave., Suite 2000 |
| 5 | Phoenix, AZ 85003 | Phoenix, AZ 85012-2788<br>*Attorneys for US Bank* |
| 6<br>7 | Twenty Largest Unsecured Creditors listed on Exhibit B hereto | |
| 8 | By:      */s/ Diane Ashworth* | |

6

2670146.1

# EXHIBIT A

**RCC North, LLC**
**Cash Flow Budget**
**For the Operating Period Through July 31, 2010**

| | May Budget | June Budget | July Budget |
|---|---:|---:|---:|
| **Income** | | | |
| Base Rent | 159,991 | 160,080 | 162,241 |
| Parking Rent | 9,205 | 9,205 | 9,205 |
| Rooftop Rent | 2,100 | 2,100 | 2,100 |
| Business Center & Other Revenue | 191 | 191 | 191 |
| CAM Charges | 2,024 | 2,024 | 2,024 |
| Sales Tax Revenue | 3,752 | 3,754 | 3,800 |
| Utilities Reimbursements - After Normal Bus Hours | 1,000 | 1,000 | 1,000 |
| **Total Income** | 178,263 | 178,354 | 180,561 |
| **Operating Expenses** | | | |
| Electricity | 44,527 | 50,703 | 50,230 |
| Water/Sewer | 3,092 | 4,063 | 4,273 |
| Natural Gas/Fuel Oil | 60 | 60 | 60 |
| Refuse Removal | 775 | 775 | 775 |
| Access Control Systems | 297 | 297 | 297 |
| Elevator - Maintenance Contract | 1,120 | 1,120 | 1,120 |
| Elevator - Phones | 260 | 260 | 260 |
| Energy Management System | 860 | 860 | 860 |
| Exterminating-Intr & Extr | 632 | 632 | 632 |
| Fire Protection Systems | 4,254 | 675 | 250 |
| HVAC - Maintenance Contract | 1,585 | 1,585 | 1,585 |
| HVAC - Supplies/Filters | 531 | 531 | 531 |
| Janitorial - Contract | 9,862 | 10,346 | 10,999 |
| Janitorial - Supplies & Maintenance | 1,900 | 1,900 | 1,900 |
| Lighting - Supplies | 733 | 733 | 733 |
| Locks & Keys | 166 | 166 | 166 |
| Parking Garage Expenses | 400 | 400 | 400 |
| Common Area Plants | 185 | 185 | 185 |
| Maintenance Engineering Dept - Labor | 10,834 | 10,834 | 10,834 |
| Window Washing Maintenance | 2,750 | 100 | 100 |
| Property Management Fees (3% of Revenue) | 5,235 | 5,238 | 5,303 |
| Landscape - Maintenance Contract | 3,161 | 3,161 | 3,161 |
| Parking Lots - Sweeping | 135 | 135 | 135 |
| Asset Management Fees | 25,000 | 25,000 | 25,000 |
| US Trustee Fees | | | 4,875 |
| Professional Fees | 12,000 | 10,000 | 10,000 |
| Sales Tax Expense | 7,504 | 3,754 | 3,800 |
| Repairs & Building Maintenance | 13,673 | 6,125 | 26,125 |
| Miscellaneous Operating Expenses | 10,000 | 10,000 | 10,000 |
| **Total Operating Expenses** | 161,531 | 149,638 | 174,589 |
| **Net Cash Flow** | 16,732 | 28,716 | 5,972 |

# EXHIBIT A

**RCC North, LLC**
**Repairs & Maintenance Detail**
**For the Operating Period Through July 31, 2010**

|  | May Budget | June Budget | July Budget |
|---|---|---|---|
| Doors, Hardware, Frames | : 650 | : 650 | : 650 |
| Electrical | : 340 | : 340 | : 340 |
| Elevator - Repairs | : 600 | : 600 | : 600 |
| Energy Management System Repairs | : 84 | : 84 | : 84 |
| HVAC - Repairs | : 967 | : 967 | : 967 |
| HVAC - Cooling Towers Rep | : 500 | : 500 | : 500 |
| Lighting Repairs & Maintenance | : 180 | : 180 | : 180 |
| Plumbing R&M Modifications | : 900 | : 200 | : 200 |
| Roof & Structural Repairs | : 352 | : 352 | : 352 |
| Security - Equipment Camera Monitoring Repairs | : 2,150 | : 302 | : 302 |
| Supplies & Materials | : 250 | : 250 | : 250 |
| Miscellaneous | : 500 | : 500 | : 500 |
| Landscape - Add'l Supplies | : 200 | : 200 | : 200 |
| Tree Trimming - Etc | : 6,000 | 1,000 | 21,000 |
|  | 13,673 | 6,125 | 26,125 |

# EXHIBIT B

OFFICE OF UNITED STATES TRUSTEE
230 N. First Ave., Suite 204
Phoenix, AZ 85003-1706

ACS JANITORIAL
5717 E. THOMAS ROAD
SUITE 2
SCOTTSDALE, AZ 85251

ALL LIGHTING PRODUCTS, INC.
20634 N. 28TH ST., #125
PHOENIX, AZ 85050

APS
P O BOX 53933 STA. 3200
PHOENIX, AZ 85072-3933

CARETAKERS BUILDING MAINTENANCE
5730 SOUTH 32ND STREET
PHOENIX, AZ 85040-3833

CREATIVE DESIGN FLOORING INC.
7891 E. MCCLAIN DR., #105
SCOTTSDALE, AZ 85260-1675

DB WATER TECHNOLOGIES
P O BOX 13637
TEMPE, AZ 85284

DETECTION LOGIC, INC.
7310 N. 108TH AVE.
GLENDALE, AZ 85307

EPIC SIGN GROUP, INC.
1043 E INDIAN SCHOOL RD
PHOENIX, AZ 85014-4811

EYE LEVEL HOLDINGS, LLC
15111 N. PIMA ROAD
SUITE 200
SCOTTSDALE, AZ 85260

IRONWOOD CUSTOM FINISHING
1822 E. MADISON
Phoenix, AZ 85034

MAXIMUM QUALITY LANDSCAPE, LLC
12390 W. SOLEDAD STREET
EL MIRAGE, AZ 85335

OLIVER PLANT COMPANY
8126 NORTH 23RD AVENUE
PHOENIX, AZ 85021-4908