Richard M. Lorenzen, Bar No. 006787
**PERKINS COIE BROWN & BAIN P.A.**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
RLorenzen@perkinscoie.com
Telephone: 602.351.8000
Facsimile: 602.648.7000

Attorneys for U.S. Bank, N.A., as Trustee for
the Registered Holders of Merrill Lynch
Mortgage Trust 2006-C1, Commercial Mortgage
Pass-Through Certificates, Series 2006-C1

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>RCC NORTH, LLC,<br><br>                     Debtor. | Case No.: 2:10-bk-11078-SSC<br><br>Chapter 11<br><br>**OBJECTION TO MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL**<br><br>Date: May 5, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 701<br>        230 N. First Avenue<br>        Phoenix, Arizona |

      U.S. Bank, N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1 ("US Bank") by and through its undersigned counsel, hereby objects in part to the Debtor's Motion for Authorization to Use Cash Collateral (the "Motion"). This objection is based upon the pleadings on file in this matter and the attached memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## FACTS

1. On or about March 24, 2006, Merrill Lynch Mortgage Lending, Inc. ("Original Lender") made a loan (the "Loan") to Debtor in the original principal amount of $59 million.

2. The Loan is evidenced, among other things, by that certain promissory note dated March 24, 2006 (the "Note").

3. The Loan is also evidenced, among other things, by that certain Loan Agreement dated as of March 24, 2006 (the "Loan Agreement"), and that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filings (the "Deed of Trust") executed by Debtor as trust or, in favor of Stewart Title & Trust of Phoenix, Inc., as Trustee, for the benefit of Original Lender, as beneficiary, which was recorded in the Official Records of Maricopa County, Arizona (the "Official Records") on March 24, 2006 as Instrument No. 20060398559.

4. The Deed of Trust refers, among other things, to that certain real property owned by Debtor known as Raintree Corporate Center One and Two, 15111 North Pima Road, Scottsdale, Maricopa County, Arizona 85260 (the "Property") and the Property's leases and rents (the "Cash Collateral", as defined in 11 U.S.C. § 363(a), and, collectively with the Property, the "Collateral").

5. Various UCC-1 Financing Statements were filed or recorded with various governmental agencies in connection with the Loan.

6. In connection with the Loan, the Debtor, Cavan Management Services, LLC, and Original Lender entered into that certain Environmental Indemnity Agreement (the "Environmental Agreement").

7. In connection with the Loan, the Debtor and Original Lender also entered into that certain Clearing Account and Control Agreement (the "Account Agreement").

8. In connection with the Loan, the Debtor and the Original Lender also entered into that certain Conditional Assignment and Subordination of Management Agreement (the

"Subordination Agreement").

9. The Note, Loan Agreement, Deed of Trust, UCC-1's, Environmental Agreement, Account Agreement, Subordination Agreement, and all other documents that evidence, secure or relate to the Loan are hereinafter referred to collectively as the "Loan Documents."

10. Original Lender assigned its interests under the Loan Documents to US Bank on or about November 6, 2006. The Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing was duly recorded in the Office Records of the Maricopa County Recorder's office on November 6, 2006 at Instrument No. 2006-146-289.

11. Accordingly, US Bank holds all of Original Lender's interests in the Loan Documents, and is the holder and owner of the Note, the beneficiary of the Deed of Trust, and the owner of all of the other Loan Documents and all claims arising there under against the Debtor and any other party.

12. Beginning in August, 2009, Debtor failed to pay to US Bank, among other things, monthly installments of principal, interest, tax and insurance escrows and reserves due under the Loan Documents.

13. On November 11, 2009, US Bank's counsel wrote a letter to Debtor (the "Demand Letter"). The Demand Letter states, among other things, that: "(i) the Loan has been accelerated and all amounts under the Loan Documents are now due and payable;" and (ii) US Bank "is planning on commencing a foreclosure sale of the Property, seeking the appointment of a receiver for the Property and is considering its other rights and remedies under the Loan Documents, at law, and in equity."

14. Debtor did not cure the defaults as requested by and/or referenced in the Demand Letter, and has continued to fail to make payments under the Loan Documents since that time, thereby remaining in default pursuant to and under the Loan Documents. As a result, US Bank was entitled to enforce its rights and remedies provided by the Loan Documents and applicable law.

15. Following Debtor's default, US Bank commenced foreclosure of the Property, as provided in the Loan Documents by causing the recordation in the Official Records of the Maricopa County Recorder, of that certain Notice of Substitution of Trustee (filing number 20100032268), and that certain Notice of Trustee's Sale (filing number 20100032269) ("Notice of Sale") on January 14, 2010.

16. On or about February 10, 2010, CWCAM obtained from CB Richard Ellis ("CBRE"), a self-contained appraisal report of the Property (the "Appraisal"). According to the Appraisal, the Property had a value of $27,100,000 on January 28, 2010.

17. Pursuant to the Notice of Sale, the Trustee's sale on the Property was scheduled for April 16, 2010. That sale was stayed by the filing of the Debtor's bankruptcy petition on April 15, 2010.

## **ARGUMENT**

18. Pursuant to 11 U.S. § 363(c)(2), the Debtor is prohibited from using, selling, or leasing Cash Collateral without US Bank's consent, or a court order, entered after notice and a hearing, authorizing such use, sale, or lease in accordance with the provisions of § 363. US Bank has not consented to the use of its Cash Collateral, and no appropriate order authorizing any such use has been entered. US Bank hereby requests that any use, sale, or lease of the Cash Collateral be prohibited unless or until US Bank's interests in such Cash Collateral are adquately protected, as required under § 363(e). *In re Center Wholesale, Inc.*, 788 F.2d 541 (9th Cir. 1986).

19. The Debtor has the budern of proving that US Bank's interests in the Cash Collateral are adequately protected. *Id.*; § 363(o); *In re Scottsdale Medical Pavilion*, 159 B.R. 295 (9th Cir. BAP 1993). According to § 361, "adequate protection" may be provided by periodic cash payments, an additional or replacement lien, or such other relief as will result in the realization in the "indubitable equivalent" of an entity's interest in the subject property.

20. US Bank is not opposed, in concept, to the use of Cash Collateral for payment

of reasonable and necessary operating and maintenance expenses relating directly to the Property, at the property level. However, according to the budget attached to the Motion (the "Budget"), the Debtor seeks authority to utilize Cash Collateral, for other borrower-related expenses, including significant payments to an insider, and payments of Professional Fees and other items. Specifically, the Budget includes the following objectionable categories and amounts of expenses:

| Category | Monthly Expense |
| --- | --- |
| Asset Management Fees | $25,000 |
| Professional Fees | $12,000/$10,000 |
| Miscellaneous Operating Expenses | $10,000 |

21. The requested Asset Management Fees represent approximately 14% of the total projected revenues, and are in addition to and separate from a proposed Property Management Fee of 3% of revenues.

22. The Asset Management Fees of $25,000.00 per month are to be paid to Cavan Property Management ("Cavan"), an insider of the Debtor. US Bank is further informed and believes that Cavan has interests in other commercial real estate projects, for which it also purports to provide management services.

23. US Bank is further informed and believes that the proposed Asset Management Fees are to compensate Cavan, in part, for its efforts to lease the unleased portions of the Property (as opposed to a leasing commission that is paid for results achieved). US Bank specifically objects to the payment of Asset Management Fees for the reason and upon the grounds that the Debtor has failed to make a sufficient showing that the payment of any such fees would adequately protect US Bank's interests. In addition, US Bank is informed and believes that Cavan had waived these Asset Management Fees during the period prior to the filing of the Debtor's bankruptcy petition. There has been no showing as to why such fees should not be similarly be waived at this point.

24. US Bank is further informed and believes that the Professional Fees requested under the Budget, include the Debtor's bankruptcy counsel, an appraiser, and the fees of a Chief Restructuring Officer who has yet to be appointed in this case. US Bank specifically objects to the payment of any such Professional Fees from its Cash Collateral for the reason and upon the grounds that such fees do not inure to the benefit of US Bank or the Collateral, but, instead, will be used to finance opposition to relief from the automatic stay, confirmation of a plan that is objectionable to US Bank, or other activities to US Bank's potential detriment and expense.

25. Finally, US Bank objects to the payment of the so-called Miscellaneous Operating Expenses from its cash collateral for the reason and upon the grounds that this appears to be essentially a slush fund that may be used for unspecified purposes, in addition to all of the other line items, and in addition to the 10% variance requested in the Motion for the estimates of those other items. As with the other objectionable fees and expenses, the Debtor has failed to demonstrate that the payment of such Miscellaneous Operating Expenses will adequately protect US Bank's interests.

26. It is clear, in US Bank's opinion, that there is no equity in this Property to protect US Bank's interests. Indeed, the Property appears to be approximately $30 million under water, as a result of the loss of the Debtor's anchor tenant, and the overall, precipitous decline in the value of commercial properties in this area. It is therefore imperative that all expenses be closely monitored and limited to what is absolutely necessary for the actual maintenance and operation of the Property, at the property level. While the Debtor understandably would like to use US Bank's Collateral for payment of other expenses, including hefty payments to its insider for "Asset Management", and payments to its appraisers and attorneys, the Debtor has categorically failed to provide any form of protection for the diminution in US Bank's Ccollateral position that would be caused by such use of US Bank's Cash Collateral.

27. US Bank is also opposed to any use of its pre-petition Cash Collateral, unless it receives a replacement lien on post-petition revenues constituting Cash Collateral, at the same priority it held pre-petition.

28. US Bank respectfully submits that there is no emergency with regard to the Debtor's request for payment of Asset Management Fees, Professional Fees, or Miscellaneous Operating Expenses, at this time. Accordingly, US Bank respectfully requests that any interim authority for the Debtor to use Cash Collateral exclude those categories at this time. Should the Debtor desire to continue to urge Court approval of the payment of those expenses, it may do so in the context of a subsequent hearing at which it requests the entry of a final order approving the use of Cash Collateral. Such a procedure will allow the parties to prepare and make available competent witnesses with regard to factual disputes concerning the amount of those fees and expenses, and the alleged benefit or lack of benefit of such fees and expenses to US Bank's collateral.

WHEREFORE, US Bank respectfully requests the Court to deny the Motion to the extent set forth herein, and subject to the granting of adequate protection of US Bank's interests for any use of Cash Collateral, including, without limitation, a replacement lien on post-petition Collateral, and the submission of regular financial reports, together with such other and further relief as the Court may deem just and proper.

DATED: May 4, 2010                                PERKINS COIE BROWN & BAIN PA

By: */s/ Richard M. Lorenzen* #006787
Richard M. Lorenzen
Attorneys for U.S. Bank, N.A., as Trustee
for the Registered Holders of Merrill Lynch
Mortgage Trust 2006-C1, Commercial
Mortgage Pass-Through Certificates,
Series 2006-C1

ORIGINAL electronically filed and
COPY served via E-mail and First Class Mail
on May 4, 2010, to:

**UNITED STATES TRUSTEE**
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

Philip R. Rudd
**POLSINELLI SHUGHART PC**
3636 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
prudd@polsinelli.com
Counsel for Debtor and Debtor in Possession

/s/ Kathryn Hardy
LEGAL18265951.1