Richard M. Lorenzen, Bar No. 006787
PERKINS COIE BROWN & BAIN P.A.
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
RLorenzen@perkinscoie.com
Telephone: 602.351.8000
Facsimile: 602.648.7000

Attorneys for U.S. Bank, N.A., as Trustee for
the Registered Holders of Merrill Lynch
Mortgage Trust 2006-C1, Commercial Mortgage
Pass-Through Certificates, Series 2006-C1

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>RCC NORTH, LLC,<br><br>               Debtor. | Chapter 11<br><br>Case No.: 2:10-bk-11078-SSC |
| US BANK, N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1,<br><br>               Movant,<br><br>vs.<br><br>RCC NORTH, LLC,<br><br>               Respondent. | **MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Property Description:<br>   Raintree Corporate Center One and Two, 5111 North Pima Road, Scottsdale, Maricopa County, Arizona 85260 |

US Bank, N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1 (hereinafter, "US Bank"), by and through its undersigned counsel, hereby moves the court for entry of an order terminating the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1), (2), and/or (3) with respect to certain real property and related personal property more fully described below and in the

*Declaration of Alex Guggenheim in Support of Motion for Relief From the Automatic Stay* (the "Guggenheim Declaration") filed concurrently herewith. This motion is based upon the attached memorandum of points and authorities, the Guggenheim Declaration, and all pleadings, papers, and records on file with the court, and such other evidence, oral or documentary, as may be presented to the court with respect to this motion.

## MEMORANDUM OF POINTS AND AUTHORTIES

**I.    INTRODUCTION**

By this motion, secured creditor US Bank (the "Lender" or "Movant") seeks an order terminating the automatic stay arising under 11 U.S.C. § 362, as it applies to the enforcement by Movant of any and all rights and remedies it possesses under the Loan Documents,[1] including the foreclosure of its collateral consisting of certain real and personal property (the "Collateral"), pursuant to 11 U.S.C. §§ 362(d)(1), (2), and/or (3), and Bankruptcy Rule 4001(a). Specifically, Movant holds a first priority perfected Deed of Trust lien with respect to certain real property commonly known as Raintree Corporate Center One and Two, 5111 North Pima Road, Scottsdale, Maricopa County, Arizona 85260, and related personal property.

Movant's Deed of Trust is security for a Loan in the original principal amount of $59 million. The Loan originated on March 4, 2000, and has been in default since at least August, 2009. As of the petition date on April 15, 2010 (the "Petition Date"), the principal balance due and owing was $57,385,721.16, plus interest, fees, costs, prepayment compensation, and other charges. No payments have been made by the Debtor since prior to August, 2009, and the appraised value of the Property as of January 28, 2010 is $27,100,000.00, leaving a deficiency of well over $30 million.

Relief from the automatic stay should be granted under 11 U.S.C. § 362(d)(1) for cause because the Debtor has taken no actions that could constitute the providing of adequate

---

[1] As defined in the Guggenheim Declaration. Unless otherwise defined herein, capitalized terms used herein shall have the meanings defined in the Guggenheim Declaration.

protection in light of the clearly negative equity cushion present with regard to the Property. Movant is also entitled to relief from the Stay under 11 U.S.C. § 362(d)(2) because there is no equity in the Property and the Property is not necessary to an effective reorganization. Finally, Movant is entitled to relief from the Stay under 11 U.S.C. § 362(d)(3), because the Property is "single asset real estate" for purposes of 11 U.S.C. § 101(51B), and the Debtor is both incapable of filing a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time, and has failed to commence monthly payments in amounts that are adequate pursuant to § 362(d)(3)(B).

## II. STATEMENT OF FACTS

1. The Loan is evidenced, among other things, by that certain promissory note dated March 24, 2006 (the "Note"). A true and correct copy of the Note is attached as Exhibit A to the Guggenheim Declaration.

2. The Loan is also evidenced, among other things, by that certain Loan Agreement dated as of March 24, 2006 (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached as Exhibit B to the Guggenheim Declaration.

3. The Debtor's obligations under the Note and Loan Agreement are secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filings (the "Deed of Trust") executed by Debtor as trustor, in favor of Stewart Title & Trust of Phoenix, Inc., as Trustee, for the benefit of Original Lender, as beneficiary, which was recorded in the Official Records of Maricopa County, Arizona (the "Official Records") on March 24, 2006 as Instrument No. 20060398559. A true and correct copy of the Deed of Trust is attached as Exhibit C to the Guggenheim Declaration.

4. The Deed of Trust encumbers, among other things, that certain real property owned by Debtor known as Raintree Corporate Center One and Two, 15111 North Pima Road, Scottsdale, Maricopa County, Arizona 85260 (the "Property") and, among other things, assigns to the Original Lender the Property's leases and rents (the "Rents"). (Guggenheim Declaration, ¶9)

5. Various UCC-1 Financing Statements were filed or recorded with various governmental agencies in order to perfect interests granted to Original Lender under the Deed of Trust. True and correct copies of those UCC-1 financing statements (the "UCC-1's") are attached collectively as Exhibit D to the Guggenheim Declaration.

6. In connection with the Loan, the Debtor, Cavan Management Services, LLC, and Original Lender entered into that certain Environmental Indemnity Agreement (the "Environmental Agreement"), a copy of which is attached as Exhibit E to the Guggenheim Declaration.

7. In connection with the Loan, the Debtor and Original Lender also entered into that certain Clearing Account and Control Agreement (the "Account Agreement"), a copy of which is attached as Exhibit F to the Guggenheim Declaration.

8. In connection with the Loan, the Debtor and the Original Lender also entered into that certain Conditional Assignment and Subordination of Management Agreement (the "Subordination Agreement"), a copy of which is attached as Exhibit G to the Guggenheim Declaration.

9. The Note, Loan Agreement, Deed of Trust, UCC-1's, Environmental Agreement, Account Agreement, Subordination Agreement, and all other documents that evidence, secure or relate to the Loan are hereinafter referred to collectively as the "Loan Documents."

10. Original Lender assigned its interests under the Loan Documents to US Bank on or about November 6, 2006. A copy of the Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing duly recorded in the Office Records of the Maricopa County Recorder's office on November 6, 2006 at Instrument No. 2006-146-289 is attached as Exhibit H to the Guggenheim Declaration.

11. Accordingly, US Bank holds all of Original Lender's interests in the Loan Documents, and is the holder and owner of the Note, the beneficiary of the Deed of Trust, and the owner of all of the other Loan Documents and all claims arising there under against the Debtor and any other party. (Guggenheim Declaration, ¶16)

12. Beginning in August, 2009, Debtor failed to pay to US Bank, among other things, monthly installments of principal, interest, tax and insurance escrows and reserves due under the Loan Documents. (Guggenheim Declaration, ¶17)

13. On November 11, 2009, US Bank's counsel wrote a letter to Debtor (the "Demand Letter"). A true and correct copy of the Demand Letter is attached as Exhibit I to the Guggenheim Declaration.

14. The Demand Letter states, among other things, that: "(i) the Loan has been accelerated and all amounts under the Loan Documents are now due and payable;" and (ii) US Bank "is planning on commencing a foreclosure sale of the Property, seeking the appointment of a receiver for the Property and is considering its other rights and remedies under the Loan Documents, at law, and in equity." (Guggenheim Declaration, ¶19)

15. Debtor did not cure the defaults as requested by and/or referenced in the Demand Letter, and has continued to fail to make payments under the Loan Documents since that time, thereby remaining in default pursuant to and under the Loan Documents. As a result, US Bank was entitled to enforce its rights and remedies provided by the Loan Documents and applicable law. (Guggenheim Declaration, ¶20)

16. Following Debtor's default, US Bank commenced foreclosure of the Property, as provided in the Loan Documents by causing the recordation in the Official Records of the Maricopa County Recorder, of that certain Notice of Substitution of Trustee (filing number 20100032268), and that certain Notice of Trustee's Sale (filing number 20100032269) ("Notice of Sale") on January 14, 2010, in the forms attached as Exhibits J and K, respectively, to the Guggenheim Declaration.

17. On or about February 10, 2010, CWCAM obtained from CB Richard Ellis ("CBRE"), a self-contained appraisal report of the Property (the "Appraisal"). A true and correct copy of that Appraisal is attached as Exhibit L to the Guggenheim Declaration. According to the Appraisal, the Property had a value of $27,100,000.00 on January 28, 2010.

18. Pursuant to the Notice of Sale, the Trustee's sale on the Property was scheduled

for April 16, 2010.  That sale was stayed by the filing of the Debtor's bankruptcy petition on April 15, 2010.  (Guggenheim Declaration, ¶23)

      19.    As a result of the Debtor's defaults under the Loan Documents, US Bank has been required to advance not less than $42,359.96 for tax and insurance on the Property, and not less than $47,927.67 in property protection advances.  (Guggenheim Declaration, ¶24)

**III.    ARGUMENT**

Section 362(d) of the Bankruptcy Code provides alternative grounds upon which relief from the automatic stay should or may be granted.  If the evidence warrants termination of the Stay under any of those alternatives, then relief from the automatic stay must be granted.  *See, e.g., In re Albany Partners, Ltd.,* 749 F.2d 670, 673 (11th Cir. 1984).  If the moving party satisfies the test of any subsection of § 362(d) for termination of the stay, the stay must be terminated even if the other grounds for relief are not met.  *In re Faires*, 34 B.R. 549 (Bankr. S.D. Wash. 1983).

      **A.    Relief From Stay Must Be Granted Under § 362(d)(1) Because US Bank's Interests Are Not Adequately Protected.**

The term "adequate protection" is not defined in § 362.  Section 361, however, sets forth three non-exclusive examples of what may constitute adequate protection, as follows: (1) periodic cash payments equivalent to any decrease in value of the secured party's interest in the collateral; (2) an additional or replacement lien on other property; or (3) other relief that provides the "indubitable equivalent" of the secured party's interest in the collateral. 11 U.S.C. § 361; *Mellor v. Pistole*, 734 F.2d 1396, 1400 (9th Cir. 1984).

The Debtor has made no showing of any ability to make periodic adequate protection payments.  To the contrary, the Debtor has failed to make payments to US Bank on this Loan for at lease nine months.  Moreover, the Debtor has no unencumbered property on which it can offer replacement liens, or any other known means of providing or offering any "indubitable equivalent" with which to protect US Bank's position.

There is clearly no equity cushion in the Property to protect US Bank's interests.  To the

contrary, it appears that the Property has a value of less than half of the Loan balance, and is under water by well more than $30 million. Moreover, the Debtor has failed to pay property taxes on the Property and insurance on the Property, and US Bank has been required to advance more than $90,000 for taxes, insurance, and/or property protection items.

This Debtor has no unencumbered property, other assets, cash, or sufficient income to protect US Bank's position. Due to the loss of significant tenants and the overall decline in real estate values in this area, US Bank's interests in the Property are clearly not adequately protected, and the Debtor has no available means to provide such adequate protection. Relief from the Stay is mandated by § 362(d)(1).

      **B.    Relief From Stay Must Be Granted Under § 362(d)(2) Because the Debtor Has No Equity In the Property and Because the Property is Not Necessary for An Effective Reorganization**

Section 362(d)(2) provides that the court shall grant relief from the automatic stay if: (1) the Debtor does not have any equity in the property; and (2) the property is not necessary to an effective plan of reorganization. 11 U.S.C. § 362(d)(2). For purposes of this subsection, Movant has the burden of proof on the issue of equity, while the Debtor has the burden of proof on all other issues. 11 U.S.C. § 362(g).

Movant has clearly carried its burden of proof with regard to equity, since the evidence clearly establishes that the Property is worth at least $30 million less than the principal balance of the Loan. Meanwhile, the Debtor cannot meet its burden to show that the Property is necessary for an effective plan of reorganization. In order to satisfy that requirement, the Debtor must do more than simply claim that no reorganization is possible without the Property. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. Ltd.,* 484 U.S. 365, 375-76 (1988). Here, the Debtor has the burden to show that the Property is necessary for an **effective** reorganization. This mean there "must be a reasonable possibility of a successful reorganization within a reasonable time" and that the Property is necessary to that reorganization. *Id*. Under this test, therefore, relief from stay should be granted if the Debtor has no reasonable likelihood of reorganization.

According to the Debtor's projected budget of operations for the period through July 31, 2010,[2] the Debtor projects monthly operating expenses (exclusive of property management fees, professional fees, and miscellaneous operating expenses) of approximately $115,000.00 per month, leaving a projected monthly net cash flow of approximately $63,000.00 per month. When the Debtor's other projected expenses are added to these expenses, the projected net cash flow from the Property on a monthly basis is only approximately $16,000.00.[3] The inescapable reality of these numbers is that the Debtor cannot conceivably propose a plan of reorganization for this Property that could service even $27 million of secured debt, or pay anything to unsecured creditors, from the continuing operation and ownership of the Property.[4] Alternatively, a proposed sale of the Property would result in a situation in which US Bank would either enter a credit bid and acquire the Property pursuant to § 363(k), or all of the proceeds from a sale to a third party would go to US Bank, leaving nothing for unsecured creditors or interest holders. There simply is no evidence based on this record that any **effective** reorganization is in prospect, or that demonstrates a reasonable possibility of a successful reorganization within a reasonable time. Relief from the stay is mandated by § 362(d)(2).

    C.    **Relief From Stay May be Granted Under § 363(d)(3) Because This is A Single Asset Real Estate Case and An Effective Reorganization is Unlikely**

The Court should also consider granting relief under § 363(d)(3), since this is a "single asset real estate case," and, as demonstrated above, there is no reasonable prospect of an effective reorganization in this case.

Single asset real estate is defined in the Bankruptcy Code as:

> Real property constituting a single property or project, other than residential real property with fewer than 4 residential units ***which generates substantially all of the gross income of a debtor . . . and on which no substantial business is being conducted by a debtor***

---

[2] *See*, *Stipulation re: Interim Use of Cash Collateral*, Exhibit A [DE 24].
[3] *See*, *Motion to Approve Use of Cash Collateral*, Exhibit A [DE 15].
[4] Monthly interest at the current contract rate under the Note, for example, on a $27 million secured claim would be approximately $134,000.00.

*other than the business of operating the real property and activities incidental.*[5]

This Debtor owns a single, commercial office real estate development, and is engaged in the business of renting space at that development to commercial tenants. Upon information and belief, the Debtor has no business generating gross income other than the renting of those spaces at the project.

While it may be true that a period of 90 days has not yet expired since the order for relief in this case, there is no evidence that the Debtor has any reasonable prospect for filing a plan of reorganization that could be confirmed over US Bank's objection. In addition, by the time of a final hearing on this Motion, should one be required, that 90 day period may also have expired.

WHEREFORE, US Bank respectfully requests the Court to enter an order vacating the stay of 11 U.S.C. § 362, and all stay and injunctions, to permit US Bank to exercise all of its rights and remedies under the Loan Documents, at law, or in equity, with regard to the Property, the Rents, or any other of US Bank's Collateral, including the right, upon completion of a foreclosure against the Property, to evict the Debtor, and take any other actions necessary to regain possession of the Property, or to remove the Debtor's property there from, together with such other and relief as the Court may deem just and proper.

May 28, 2010.    **PERKINS COIE BROWN & BAIN PA**

By: /s/ Richard M. Lorenzen (006787)
 Richard M. Lorenzen
 2901 North Central Ave., Suite 2000
 Phoenix, Arizona 85012
Attorneys for U.S. Bank, N.A., as Trustee for the
 Registered Holders of Merrill Lynch Mortgage
 Trust 2006-C1, Commercial Mortgage Pass-
 Through Certificates, Series 2006-C1

---

[5] 11 U.S.C. § 101(51B)(emphasis added). *See also, In re Philment Dev. Co.*, 181 B.R. 220, 223 (Bankr. E.D. Penn. 1995).

ORIGINAL electronically filed and
COPY served via E-mail and First Class Mail
on May 28, 2010, to:

**UNITED STATES TRUSTEE**
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

**RCC NORTH LLC**
15333 North Pima Road, Suite 305
Scottsdale, AZ 85260
Debtor

Philip R. Rudd
**POLSINELLI SHUGHART PC**
3636 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
prudd@polsinelli.com
Counsel for Debtor

**Twenty Largest Unsecured Creditors**
-- see attached amended list


/s/ *Kathryn Hardy*


60642-0165/LEGAL18205810.1