John J. Hebert (#010633)
Mark W. Roth (#010708)
Philip R. Rudd (#014026)
**POLSINELLI SHUGHART PC**
3636 North Central Avenue, Suite 1200
Phoenix, AZ 85012
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: prudd@polsinelli.com

*Attorneys for the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| RCC NORTH, LLC | Case No. 2:10-bk-11078-SSC |
| Debtor. | **PLAN OF REORGANIZATION DATED JULY 14, 2010** |

RCC North, LLC ("RCC North" or "Debtor"), debtor-in-possession in the above-captioned bankruptcy case, hereby submits to the Court and creditors of the Debtor's Estate the following "Plan of Reorganization Dated July 14, 2010" (the "Plan"), pursuant to § 1121(a) of the Bankruptcy Code.

**I.    DEFINITIONS.**

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in this Section I of the Plan. Any term used in the Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

**Administrative Claim**:    Every cost or expense of administration in the pending case,

including, but not limited to, any actual and necessary expenses of preserving or disposing of the assets of the Estate, any actual and necessary expenses incurred in operating any of the Debtors' business post-petition, and all Claims approved under § 507(a)(1) of the Bankruptcy Code, including professional fees and costs approved by the Court.

**Allowed Claim:** A Claim:

1.     With respect to which a proof of claim has been filed with the Court within the applicable period of time fixed by Rule 3003 of the Rules of Bankruptcy Procedure and to which no objection to the allowance of the Claim has been filed by the Debtor or any other party or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending; or

2.     Scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), Rules of Bankruptcy Procedure, and not listed as disputed, contingent or un-liquidated as to the amount.

An Allowed Claim shall not include un-matured or post-petition interest, penalties, fees or costs, unless specifically stated in the Plan.  Notwithstanding § 502(a) of the Code and Rules 3001 and 3003, for the purposes of the Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Plan.

**Allowed Interest**:  An Interest in the Debtor held by a person or entity, as of the Effective Date, and as to which (a) such Interest was listed in the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, and no objection has been made within the time allowed for the making of objections, (b) a Final Order has been entered allowing such Interest, or (c) a timely and proper proof of interest has been filed, and as to which no objection to the allowance of the Interest has been filed by the Debtor or any other party, or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending.

**Allowed Priority Claim**:  The Allowed Claim of a Claimant that is entitled to priority in payment under 11 U.S.C. §§ 507(a)(2) through (a)(10).

**Allowed Secured Claim**:  An Allowed Claim to the extent that such Allowed Claim is

secured by a lien which is unavoidable, on property in which the Estate has an interest, to the extent of the value of such Creditor's interest in the Estate's interest in such property as determined in light of the purpose of the valuation and of the proposed disposition and use of such property and as determined as of the Petition Date.

**Allowed Unsecured Claim**:  An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the Estate has an interest.

**Bankruptcy Code**:  11 U.S.C. §§ 101, <u>et seq</u>.

**Bankruptcy Court**:  The United States Bankruptcy Court for the District of Arizona or any other court which may have jurisdiction over this case or any proceeding arising under, in, or relating to this case.

**Chapter 11**:  Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101, <u>et seq</u>.

**Claim**:   (a) A right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the date of Confirmation; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation; or (c) a claim arising under 11 U.S.C. § 502(g).

**Claimant or Creditor**:  Any person or entity that asserts a Claim.

**Confirmation**:  The signing by the Court of the Confirmation Order.

**Confirmation Date**:  The date upon which the Confirmation Order is entered upon the Bankruptcy Court's docket.

**Confirmation Order**:  The Order signed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129 confirming this Plan.

**Contingent Claim**:  Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a sum certain, or which has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) which has not been allowed on or before the Confirmation Date.

2706779.1

**Court**:  The Bankruptcy Court.

**Debtor**:  RCC North, LLC, a Delaware limited liability company.

**Disbursing Agent**:  The Reorganized Debtor shall be the Disbursing Agent and shall make distributions to holders of Allowed Claims under the Plan.

**Disclosure Statement**:  The Debtor's Disclosure Statement relating to this Plan, and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

**Disputed Claim**:  A Claim which the Debtor listed as un-liquidated, disputed or contingent in its Schedules of Assets and Liabilities, or to which an objection has been filed which has not been resolved by a Final Order of the Bankruptcy Court.

**Effective Date**:  The first business day which is at least 30 days after the Confirmation Date.  In the event the Confirmation Order has been stayed by a court of competent jurisdiction, the Debtor may elect to delay the Effective Date pending a resolution of the order staying the Confirmation Order.

**Estate**:  The Debtor's bankruptcy estate created by the filing of the Petition as identified and described in § 541 of the Bankruptcy Code.

**Eye Level Holdings**:  A tenant at the Real Property and creditor of the Debtor.  Eye Level Holdings is the successor-in-interest to Cylon, LLC.

**Fennemore Craig**:  Fennemore Craig, PC, a pre-petition provider of legal services to the Debtor and a secured creditor of the Debtor.

**Final Order**:  An order or judgment of the Bankruptcy Court which has not been appealed and as to which any applicable appeal period has expired or, if such order has been appealed, as to which no stay has been entered or as to which any and all appellate orders or judgments with respect to such appeal, or any subsequent appeal to a higher court, have become final and non-appealable.

**Insider**:  A person or entity within the definition contained at § 101(31) of the Bankruptcy Code.

**IRS**:  The Internal Revenue Service.

**Interest**:  Any equity interest in the Debtor as of the Petition Date.

**Interest Holder**:  Any person or persons owning an Interest in the Debtors as of the Petition Date.

**Larson Allen**:  Larson Allen, LLP, a pre-petition provider or accounting and tax services to the Debtor and a secured creditor of the Debtor.

**New Debt Obligations**:  Those debts of the Debtor which existed pre-confirmation, but which are modified by the confirmed Plan resulting in the creation of a new note.  The obligations for which the Reorganized Debtor has liability under the terms of the confirmed Plan.  Said New Obligations shall not be considered in default unless and until the Reorganized Debtor defaults on said obligations after the Effective Date.

**New Interest Holders:**  The owner(s) of the equity interests in the Reorganized Debtor, consisting of either (i) RCCH or (ii) if an auction for the equity interests in the Reorganized Debtor is held, then the Successful Bidder, if the successful bidder at the auction is not RCCH.

**New Value:**  The cash infusion to be provided to the Reorganized Debtor by either (i) RCCH or (ii) if there is an auction of the equity interests in the Reorganized Debtor as described below, then the Successful Bidder (if RCCH is not the successful bidder), in exchange for the equity interests in the Reorganized Debtor.

**Oversecured**:  The term describing the Allowed Claim of a Secured Creditor when the value of the collateral securing said Allowed Claim exceeds the amount of the Allowed Claim.

**Person**:  Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

**Petition**:  The original Petition filed by the Debtor under Chapter 11.

**Petition Date**:  The date on which the Petition was filed, April 15, 2010.

**Plan**:  This Plan of Reorganization and any amendments or supplements thereto.

**Plan Rate**:  The annual rate of interest to be paid with respect to Allowed Claims entitled to recover interest pursuant to this Plan, which rate is 5.95%, unless the Bankruptcy Court determines that the Plan Rate should be some other amount, in which case the Plan Rate shall be the rate determined by the Court.

2706779.1

**Pro Rata**:  The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

**RCCH:**  The Debtor's current Interest Holder who intends to acquire the equity interests in the Reorganized Debtor by infusing the New Value as provided in this Plan.

**Real Property:**  The real property owned by the Debtor and the principal asset of the Estate, comprising two Class "A" office buildings and the related corporate campuses known as Phase I and Phase II of the Raintree Corporate Center located north of the northeast corner of Loop 101 (Pima Freeway) and Raintree Drive, at 15333 North Pima Road and 15111 North Pima Road, respectively, in Scottsdale, Arizona.

**Reserve Account**:  The account into which the New Value will be placed as required by the Plan.

**Reorganized Debtor**:  The Debtor after the Effective Date.

**Successful Bidder**:  The successful bidder at the auction of the equity interests in the Reorganized Debtor, if any such auction is held, if such successful bidder is not RCCH.

**Undersecured**:  The term describing the Allowed Claim of a Secured Creditor when the value of the collateral securing said Allowed Claim is less than the amount of the Allowed Claim.

**Unliquidated**:  The term describing the Allowed Claim of a Creditor when the value of the claim has not been determined or stated with finality.

**US Bank**:  US Bank, N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1.

## II.     CLASSIFICATION OF CLAIMS AND INTERESTS.

### A.     Class 1:  Priority Claims

1.     Class 1-A consists of Allowed Priority Claims under 11 U.S.C. § 503 and § 507(a)(2) (Administrative Claims).

2.     Class 1-B consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(3) (Wage Claims).

3.     Class 1-C consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8) (Tax Claims).

2706779.1

**B. Class 2: Secured Claims**

    1.    Class 2-A consists of the Allowed Secured Claim of US Bank.

    2.    Class 2-B consists of the Allowed Secured Claim of Maricopa County for real property taxes.

    3.    Class 2-C consists of the Allowed Secured Claim of Fennemore Craig.

    4.    Class 2-D consists of the Allowed Secured Claim of Larson Allen.

**C. Class 3: Allowed Claim of Eye Level Holdings**

Class 3 consists of the Allowed Claim of Eye Level Holdings relating to the Debtor's obligation to reimburse Eye Level Holdings for tenant improvements made to Eye Level Holdings' leased premises.

**D. Class 4: Tenant Security Deposits**

Class 4 consists of Allowed Claims by tenants for the return of tenant security deposits held by the Debtor.

**E. Class 5: Unsecured Claims**

Class 5 consists of the Allowed Unsecured Claims of Creditors not otherwise treated in the Plan.

**F. Class 6: Interest Holders**

Class 6 consists of all Allowed Interests of Interest Holders.

**III. IMPAIRMENT OF CLASSES.**

Classes 1-A, 1-B, and 1-C are unimpaired under the Plan. All other Classes are Impaired, as that term is defined in 11 U.S.C. § 1124.

**IV. TREATMENT OF CLASSES.**

**A. <u>Class 1: Priority Claims</u>**

    1.    <u>Class 1-A: Administrative Claims</u>

This Class consists of Allowed Priority Claims under 11 U.S.C. §§ 503 and 507(a)(2) – administrative priority claims. Unless Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, on or before the Effective Date or as the same are Allowed and ordered paid by the Court. Any Class 1-

A Claim not allowed as of the Effective Date shall be paid as soon thereafter as it is allowed by the Court according to the terms of this Class. This Class is not impaired.

### 2. Class 1-B: Wage Claims

This Class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(4) – wage claims. As provided in 11 U.S.C. § 1129(a)(9)(B), unless Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-B shall be paid in full, in cash, on or before the Effective Date. The Debtor does not believe that any claims exist under this Class. Any Class 1-B Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. This Class is not impaired.

### 3. Class 1-C: Tax Claims

This Class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8) – tax Claims which are not otherwise treated as secured claims herein. As provided in 11 U.S.C. § 1129(a)(9)(C), unless Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-C shall be paid in full, in cash, on or before the Effective Date, or, at the Debtor's option, such Allowed Claims shall be paid, on account of such Allowed Claim, deferred cash payments, over a period not exceeding six years after the date of assessment of such Claim, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim. Any Class 1-C Claims not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. This Class is not impaired.

### B. Class 2: Secured Claims

### 1. Class 2-A – Allowed Secured Claims of US Bank

This Class consists of the Allowed Secured Claim of US Bank. This Class is impaired. US Bank asserts that it has the right to make an election under § 1111(b) of the Bankruptcy Code. Accordingly, the following discussion sets forth alternate treatments of US Bank's secured claim, depending upon whether US Bank makes the § 1111(b) election or not.

### a. US Bank's Treatment if the § 1111(b) Election is Not Made

If US Bank does not make the § 1111(b) election, then pursuant to § 506(a)(1) of the

Bankruptcy Code, the amount of US Bank's Allowed Secured Claim shall be limited to the value of its collateral, which US Bank asserts (and the Debtor does not contest) is $27,100,000. The remainder of US Bank's Allowed Claim shall be treated as a general unsecured claim in Class 5. The Debtor intends to pay US Bank's Allowed Secured Claim in full, with interest at the Plan Rate, over a period of seven years.

Specifically, the Debtor will execute and deliver to US Bank a promissory note (the "New US Bank Note") in the principal face amount of $27,100,000, *i.e.* the amount of US Bank's Allowed Secured Claim. The New US Bank Note will mature and become fully due and payable on the 7th anniversary of the Effective Date (the "New US Bank Note Maturity Date"). During the term of the New US Bank Note, the Debtor will make monthly principal and interest payments to US Bank based upon a 25 year amortization schedule with interest at the Plan Rate. On the New US Bank Note Maturity Date, all remaining amounts of principal and interest due under the New US Bank Note will be immediately due and payable, and will be paid by the Debtor to US Bank either through a sale of the Real Property or through refinancing of the Real Property. The first payment of principal and interest will be made on the Effective Date, and each monthly payment thereafter will be made on the first business day of each month during the term of the New US Bank Note.

US Bank will retain its existing lien on the property that served as collateral for US Bank's Claim pre-petition until the New US Bank Note has been satisfied in full. At any time prior to the end of the term, the Debtor may pay the balance of the New US Bank Note without penalty.

The Debtor anticipates that, during the first approximately 24 months following the Effective Date of the Plan, before the occupancy of the Real Property becomes stabilized, the Real Property may not generate sufficient net cash flow, after paying operating expenses, to make the full amount of monthly principal and interest payments payable under the New US Bank Note (the "Monthly Note Payments"). Accordingly, on the Effective Date of the Plan, as part of the New Value infused by RCCH, or the Successful Bidder, RCCH or the Successful Bidder will deposit $3,000,000 into an interest bearing reserve account (the "Reserve Account") which will be specifically earmarked and used to pay any cash flow deficiency between the monthly net cash

flow generated by the Real Property and the Monthly Note Payments during the term of the New US Bank Note (a "Cash Flow Deficiency"). To the extent that the use of the funds in the Reserve Accounts will result in the amount of funds in the Reserve Account being reduced to an amount below $200,000, at any time during the term of the New US Bank Note, the Reorganized Debtor (from any retained excess cash flow) or RCCH, or the Successful Bidder, if any, (from an additional contribution of capital) will replenish the Reserve Account such that the Reserve Account shall always be maintained in the total amount of $200,000 until the New US Bank Note matures.

The failure to maintain the Reserve Account in the total amount of at least $200,000 will constitute a default under the New US Bank Note and the lien in the collateral securing the New US Bank Note.

Immediately upon payment, in full, of the New US Bank Note, US Bank's Allowed Secured Claim, and its secured interest in the Real Property, will be deemed satisfied, extinguished, released and discharged, in full.

### b. US Bank's Treatment if the § 1111(b) Election is Made

If US Bank makes the § 1111(b) election, then US Bank's entire Allowed Claim will be treated as fully secured, and US Bank will not have any claims in Class 5.

In this event, the Debtor will treat US Bank's Allowed Claim as follows:

● US Bank will retain its lien on the Real Property in the full amount of its Allowed Claim, as such Allowed Claim is determined by the Court.

● For purposes of this analysis, the Debtor assumes that US Bank's Allowed Claim will be established at no more than $59,000,000, rather than the nearly $71,000,000 asserted by US Bank in its pleadings filed in this case.

● The Reorganized Debtor will make an initial principal payment to US Bank on the Effective Date of the Plan in the amount of $425,000 from the New Value contributed by RCCH or the Successful Bidder, if any.

● The Reorganized Debtor will pay the remaining total amount of US Bank's Allowed Claim over a period of 300 months as follows:

(i)     In the first year following the Effective Date of the Plan, the Reorganized Debtor will make payments of $126,250 per month to US Bank, for a total annual payment of $1,515,000;

(ii)     In the second year following the Effective Date of the Plan, the Reorganized Debtor will make payments of $141,250 per month to US Bank, for a total annual payment of $1,695,000 and a total payment on US Bank's Allowed Claim at the end of twenty four months in the amount of $3,210,000;

(iii)     In the third year following the Effective Date of the Plan, the Reorganized Debtor will make payments of $156,250 per month to US Bank, for a total annual payment of $1,875,000 and a total payment on US Bank's Allowed Claim at the end of thirty six months in the amount of $5,085,000;

(iv)     In the fourth year following the Effective Date of the Plan, the Reorganized Debtor will make payments of $171, 250 per month to US Bank, for a total annual payment of $2,055,000 and a total payment on US Bank's Allowed Claim at the end of forty eight months in the amount of $7,140,000;

(v)     In the fifth year following the Effective Date of the Plan, the Reorganized Debtor will make payments of $186,250 per month to US Bank, for a total annual payment of $2,235,000 and a total payment on US Bank's Allowed Claim at the end of sixty months in the amount of $9,375,000;

(vi)     In the sixth through tenth years following the Effective Date of the Plan, the Reorganized Debtor will make payments of $186,250 per month to US Bank, for  total annual payments of $2,235,000 per year and a total payment on US Bank's Allowed Claim at the end of 120 months in the amount of $20,550,000;

(vii)     In the eleventh through fifteenth years following the Effective Date of the Plan, the Reorganized Debtor will make payments of $201,250 per month to US Bank, for total annual payments of $2,415,000 per year and a total payment on US Bank's Allowed Claim at the end of 180 months in the amount of $32,625,000;

(viii)     In the sixteenth through twentieth years following the Effective Date of the

Plan, the Reorganized Debtor will make payments of $216,250 per month to US Bank, for total annual payments of $2,595,000 per year and a total payment on US Bank's Allowed Claim at the end of 240 months in the amount of $45,600,000;

(ix)     In the twenty-first through twenty-fifth years following the Effective Date of the Plan, the Reorganized Debtor will make payments of $216,250 per month to US Bank, for total annual payments of $2,595,000 per year until the total amount of US Bank's Allowed Claim of $59,000,000 (including the initial principal payment of $425,000) is paid in full.

●     Notwithstanding the foregoing payment schedule, the Reorganized Debtor shall have the right and ability to make principal reduction payments to US Bank during the twenty-five year payoff period, without penalty, from excess cash flow, if any, from the operations of the Real Property.

●     In the event the Court finds that US Bank's Allowed Claim is lesser or greater than $59,000,000, then the foregoing payment scheme will be adjusted accordingly by increasing or decreasing the monthly payments, as necessary, to pay US Bank's Allowed Claim over a period of 25 years.  The adjusted annual payments will be in the same ratio to the Court-determined, actual Allowed Claim as the foregoing schedule is to the anticipated Allowed Claim of $59,000,000.

●     The Debtor anticipates that, during the first approximately 24 months following the Effective Date of the Plan, before the occupancy of the Real Property becomes stabilized, the Real Property may not generate sufficient net cash flow, after paying operating expenses, to make the full amount of monthly payments called for in the foregoing payment schedule.  Accordingly, just as with the Debtor's treatment of US Bank's claim if US Bank does not make the § 1111(b) election, on the Effective Date of the Plan, as part of the New Value infused by RCCH or the Successful bidder, if any, RCCH or the Successful Bidder will deposit $3,000,000 into the Reserve Account, which will be specifically earmarked and used to pay any cash flow deficiency between the monthly net cash flow generated by the Real Property and the required monthly payments set forth in the foregoing payment schedule.  To the extent that the use of the funds in the Reserve Accounts will result in the amount of funds in the Reserve Account being reduced to an amount

below $200,000, at any time during the 25 year payment period, the Reorganized Debtor (from any retained excess cash flow) or RCCH, or the Successful Bidder, if any, (from an additional contribution of capital) will replenish the Reserve Account such that the Reserve Account shall always be maintained in the total amount of $200,000 until the US Bank's Allowed Claim is paid in full matures.  The failure to maintain the Reserve Account in the total amount of at least $200,000 will constitute a default under the Plan and the lien in the Real Property securing the New US Bank Note.

●    Immediately upon payment, in full, of US Bank's Allowed Claim, US Bank's secured interest in the Real Property will be deemed satisfied, extinguished, released and discharged, in full.

●    The Reorganized Debtor reserves its right and ability to sell or refinance the Real Property at any time during the twenty-five year payment period, so long as the net sale or loan proceeds (after payment of costs of sale or loan) are sufficient to pay the remaining amount of US Bank's Allowed Claim in full.

**2.    Class 2-B –Allowed Secured Claim of Maricopa County**

This Class consists of the Allowed Secured Claim of Maricopa County, Arizona ("Maricopa County"), if any, that is secured by a tax lien on the Real Property.    This Class is impaired.

Commencing on the Effective Date, the Allowed Secured Claim of Maricopa County, if any, will be paid in equal quarterly payments of principal and interest over a term of 1 year. Interest will accrue and will be paid at the statutory rate plus 2%.  The County will retain its existing secured interest in the Real Property until this claim has been satisfied in full.

If funds generated from the normal operations of the Real Property are insufficient to pay the secured real property tax claims as provided herein, the payments required herein to Maricopa County will be made from the New Value contributed by RCCH or the Successful Bidder, if any.

**3.    Class 2-C –Allowed Secured Claim of Fennemore Craig**

This Class consists of the Allowed Secured Claim of Fennemore Craig in the amount of $26,439.  This Class is impaired.

Although the retention agreement between Fennemore Craig and the Debtor does not provide for the payment of interest on Fennemore Craig's claim, Fennemore Craig's Allowed Secured Claim shall include interest at the Plan Rate from the date that the amount due and owing to Fennemore Craig first became 60 days past due until the Effective Date of the Plan. On the Effective Date of the Plan, Fennemore Craig will be entitled to apply its collateral (consisting of a cash retainer) to the principal amount of Fennemore Craig's claim plus any such accrued interest. Regardless of the total amount of Fennemore Craig's claim, Fennemore Craig's application of its retainer to the principal amount of the claim and any accrued interest shall be deemed to be in full and final satisfaction of Fennemore Craig's claims against the Debtor. To the extent that the amount of the retainer is greater than the amount of Fennemore Craig's claim, including accrued interest, Fennemore Craig shall deliver any excess funds to the Debtor after application of the retainer to Fennemore Craig's claim.

### 4. Class 2-D –Allowed Secured Claim of Larson Allen

This Class consists of the Allowed Secured Claim of Larson Allen in the amount of $3,941.56. This Class is impaired.

Although the retention agreement between Larson Allen and the Debtor provides for the payment of interest on Larson Allen's claim at the rate of 1.5% per month, Larson Allen's Allowed Secured Claim shall include interest at the Plan Rate from the date that the amount due and owing to Larson Allen first became 60 days past due until the Effective Date of the Plan. On the Effective Date of the Plan, Larson Allen will be entitled to apply its collateral (consisting of a cash retainer) to the principal amount of Larson Allen's claim plus any such accrued interest. Regardless of the total amount of Larson Allen's claim, Larson Allen's application of its retainer to the principal amount of the claim and any accrued interest shall be deemed to be in full and final satisfaction of Larson Allen's claims against the Debtor. To the extent that the amount of the retainer is greater than the amount of Larson Allen's claim, including accrued interest, Larson Allen shall deliver any excess funds to the Debtor after application of the retainer to Larson Allen's claim.

### C.     Class 3:  Allowed Claim of Eye Level Holdings

This Class consists of the Allowed Claim of Eye Level Holdings for unreimbursed tenant improvement costs and expenses owing by the Debtor to Eye Level Holdings in the amount of approximately $130,346 ("Eye Level Holdings' Reimbursement Claim").  This Class is impaired.

Eye Level Holdings' Reimbursement Claim shall not accrue interest.  Eye Level Holdings' Reimbursement Claim shall be satisfied and paid in full by Eye Level Holdings setting off against the monthly rent owing by Eye Level Holdings to the Reorganized Debtor the following amounts pursuant to the following schedule until Eye Level Holdings' Reimbursement Claim is satisfied in full:

For the first six months that rent is due from Eye Level Holdings to the Debtor following the Effective Date, Eye Level Holdings shall be entitled to set off the amount of $5,000 per month from its monthly rent payment to the Reorganized Debtor.  For the following six months, Eye Level Holdings shall be entitled set off the amount of $7,000 per month from its monthly rent payment to the Reorganized Debtor.  For the following six months, Eye Level Holdings shall be entitled set off the amount of $10,000 per month from its monthly rent payment to the Reorganized Debtor until Eye Level Holdings' Reimbursement Claim is paid in full.

### D.     Class 4:  Tenant Security Deposits

This Class consists of all Allowed Unsecured Claims of tenants for pre-petition security deposits held by the Debtor in the total aggregate amount of approximately $212,592.86.  This Class is impaired.

The Reorganized Debtor shall retain its right and ability to determine whether and what extent a tenant is entitled to the return of its security deposit pursuant to the terms of the lease between the Debtor and the tenant and applicable state law.  However, notwithstanding anything to the contrary in the lease between the Debtor and its tenants or in applicable law, valid and enforceable tenant security deposits will be paid to tenants within 90 days of the later of either (a) the date that the Debtor determines the appropriate amount of the security deposit to be returned or (b) the date the tenant vacates its premises.  This 90 day delay is necessary in order to ensure that the Debtor has sufficient funds on hand to return the security deposit to the tenant, either from the

cash flow of the Real Property or from an infusion of cash from one or more of the New Interest Holders.

###    E.    Class 5:  Unsecured Claims

This Class consists of all Allowed Unsecured Claims of Creditors that are not specifically treated elsewhere in the Plan (*e.g.*, this Class does not include the Allowed Claim of Eye Level Holdings, claims of tenants for security deposits, or any administrative or priority claims).  If US Bank does not make the § 1111(b) election, then US Bank's unsecured deficiency claim—*i.e.*, the difference between the amount of US Bank's Allowed Claim and the value of the Real Property— will be included in this Class.  If US Bank makes the § 1111(b) election, then US Bank will not have a deficiency claim and will not participate in distributions to holders in this Class 5.  This Class is impaired.

####      a.      Treatment of Allowed Unsecured Claims if US Bank Does Not Make the § 1111(b) Election

If US Bank does not make the § 1111(b) election, then Allowed Unsecured Claims will be treated as follows:

●      If RCCH is the successful bidder at the auction discussed below, RCCH and/or any other affiliates of the Debtor holding Unsecured Claims, including Cavan Management Services (the manager of RCCH) ("CMS"), will waive their Unsecured Claims against the Debtor and the Debtor's Estate, and will not participate in any distribution to Class 5 Claimants.  However, if RCCH is not the successful bidder at the auction, then RCCH and/or any other affiliates of the Debtor holding Allowed Unsecured Claims against the Debtor, including CMS, shall participate in the distributions to this Class.

●      The Allowed Unsecured Claims in this Class will be treated as follows:

(i)      First, Allowed Unsecured Claims will share, pro-rata, in a distribution of the sum of $500,000 in cash (the "Unsecured Distribution Amount") paid by the Reorganized Debtor, from the New Value contribution, on the 90th day following the Effective Date of the Plan.

(ii)      Second, the Reorganized Debtor will issue to each holder of an Allowed Unsecured Claim its pro rata portion of a $5 million subordinated debenture payable to holders of Allowed Unsecured Claims (the "Subordinated Debenture").  The Subordinated Debenture will not

accrue interest. The Subordinated Debenture will be secured by a second position lien in and to the Real Property, subject only to real property taxes and the Allowed Secured Claim of US Bank. The Reorganized Debtor shall not be required to make periodic payments to the holders of the Subordinated Debenture. However, the Subordinated Debenture will be fully due and payable on the 7th anniversary of the Effective Date of the Plan or upon the sale or refinancing of the Real Property.

- RCCH, or the Successful Bidder, if any, will contribute the Unsecured Distribution Amount, as part of the New Value contribution, into an account created by the Reorganized Debtor for the receipt of such funds (the "Unsecured Reserve Account").

- Upon their receipt of (a) their respective pro rata portions of the Unsecured Distribution Amount and (b) their pro rata distributions from the payment of the Subordinated Debenture, all Allowed Unsecured Claims in this Class shall be deemed paid and discharged in full.

### b. Treatment of Allowed Unsecured Claims if US Bank Makes the § 1111(b) Election

If US Bank makes the § 1111(b) election, then Allowed Unsecured Claims will be treated as follows:

- RCCH and/or any other affiliates of the Debtor holding Unsecured Claims, including CMS, will waive their Unsecured Claims against the Debtor and the Debtor's Estate, and will not participate in any distribution to Class 5 Claimants.

- The Allowed Unsecured Claims in this Class (again, not including any claim by US Bank, Eye Level Holdings, or tenants for security deposits, which claims are treated elsewhere in this Plan) will be paid in full but without interest, by the Reorganized Debtor from the New Value contribution, on the 90th day following the Effective Date of the Plan. The Debtor estimates that these claims will not exceed approximately $75,000.

- Upon their receipt of the funds from the Reorganized Debtor, all Allowed Unsecured Claims in this Class shall be deemed paid and discharged in full.

### F. Class 6: Interest Holders

Class 6 consists of all Allowed Interests of the Interest Holder in the Debtor. The Debtor's

Interest Holder is RCCH. RCCH will purchase the equity interests in the Reorganized Debtor by the contribution of cash to the Reorganized Debtor, on the Effective Date, in the amount of $8,000,000 (*i.e.*, the New Value). The New Value will be used to:

(a) pay the amount necessary to pay all Class 1 Allowed Priority Claims as set forth above;

(b) pay the amounts to Maricopa County as set forth above, to the extent that cash flow from the Real Property is insufficient to pay the taxes;

(c) pay the $425,000 initial principal payment to US Bank, if US Bank makes the § 1111(b) election;

(d) pay the amount necessary to fund the Reserve Account in the amount of $2,500,000 as required by the treatment of Class 2-A Claimants as set forth above;

(e) pay either (1) the Unsecured Distribution Amount of $500,000, if US Bank does not make the § 1111(b) election or (2) the amount necessary to pay Allowed Unsecured Claims in Class 5 (estimated at approximately $75,000), in full, if applicable if US Bank makes the § 1111(b) election; and

(f) fund a capital reserve account, in the amount of approximately $4.5 million, necessary to fund, among other things, (1) tenant improvements, (2) broker's commissions, and (3) other necessary and appropriate capital expenses of the Real Property to ensure that the value of the Real Property is maintained.

If the Court determines that, under the circumstances, the New Value to be contributed by RCCH is insufficient, or that other parties-in-interest should be allowed to bid for the equity interests in the Reorganized Debtor, then other interested parties may bid for the equity interests in the Reorganized Debtor by meeting all of the terms and conditions identified below. Such bids shall be made pursuant to the following auction procedures and terms:

a. The auction of the equity interests in the Reorganized Debtor will be held at the time of the Confirmation Hearing in the courtroom, with the Court presiding over the bidding.

b. Any party wishing to bid on the equity interests of the Reorganized Debtor must satisfy the following requirements to be a "Qualified Bidder":

i. The bidder must be a current Creditor or Interest Holder of the Debtor. This

requirement is necessary to avoid any potential registration or like requirements of any applicable securities laws or regulations.

ii.  The bidder must deposit $1,000,000 in cash ("Deposit") with the Debtor's counsel at least twenty-five days prior to the Confirmation Hearing. Any Deposits will be returned to any unsuccessful bidder on the day following the Confirmation Hearing. The Deposit, plus any additional amounts bid by the Successful Bidder at the auction for the equity interests in the Reorganized Debtor, will be delivered to the Reorganized Debtor on the Effective Date of the Plan.

iii.  At least twenty-five days prior to the Confirmation Hearing, all bidders must provide satisfactory evidence to the Debtor of their ability to make a cash payment to the Debtor, on the Effective Date of the Plan, in the amount of no less than $8,250,000. To the extent that the Debtor contests the sufficiency of the evidence submitted regarding a bidder's ability to pay such amount, the evidence will be presented to the Court at the Confirmation Hearing, prior to bidding, and the Court will make a determination as to the sufficiency of the evidence and whether the bidder should be deemed to be a Qualified Bidder.

iv.  At least twenty-five days prior to the Confirmation Hearing, all bidders must provide satisfactory evidence to the Debtor of their ability to operate the Reorganized Debtor in such a manner as to satisfy the requirements of this Plan, including payments to administrative claimants, secured creditors and unsecured creditors, on the terms and conditions set forth herein. To the extent that the Debtor contests the sufficiency of the evidence submitted regarding a bidder's ability to make payments as required by the Plan, the evidence will be presented to the Court at the Confirmation Hearing, prior to bidding, and the Court will make a determination as to the sufficiency of the evidence and whether the bidder should be deemed to be a Qualified Bidder.

v.  At least twenty-five days prior to the Confirmation Hearing, all bidders must provide satisfactory evidence to the Debtor that they are authorized to do business in the State of Arizona, and have, or have the ability to obtain, any and all necessary permits

2706779.1

and/or licenses to operate the Real Property. To the extent that the Debtor contests the sufficiency of such evidence, the evidence will be presented to the Court at the Confirmation Hearing, prior to bidding, and the Court will make a determination as to the sufficiency of the evidence and whether the bidder should be deemed to be a Qualified Bidder.

c. All bids for the interests in the Reorganized Debtor shall be in increments of no less than $250,000.

d. In order for a Qualified Bidder's bid to be determined to be higher and better than the New Value to be contributed by RCCH as set forth above, the Qualified Bidder's bid must:

i. Exceed, by at least $250,000, RCCH's $8 million bid; and

ii. Provide that the Qualified Bidder will comply with and perform under the terms of this Plan, including the payments to creditors (including tenant security deposits) as provided herein.

e. RCCH shall have the right and ability to bid at the auction.

Competing bids will be assessed by the Court for their relative merits including, but not limited to, the amount of the bid and the expertise of the would-be New Interest Holder to manage and guide the Reorganized Debtor after the Effective Date and to satisfy the requirements of this Plan, including its ability to make the payments to creditors required herein and to satisfy the assumed obligations as required herein.

On the Effective Date, if RCCH is not the successful bidder at the auction, then the Successful Bidder at the auction must deliver its cash bid to the Reorganized Debtor and, upon such delivery, the Successful Bidder will be deemed to hold the equity interests in the Reorganized Debtor, subject to all terms and conditions of this Plan, including the obligations to other creditors as provided herein and the assumption of liabilities as provided herein.

## V. MEANS FOR EXECUTING THE PLAN.

### A. Funding

The Plan will be funded by operations of the Real Property and a capital infusion in the amount of the New Value by RCCH or the Successful Bidder, if an auction as described above is

held. As a showing of good faith and commitment to the Plan, RCCH will place $250,000 in "escrow" in the trust account of the Debtor's bankruptcy counsel on or before the Confirmation Date. These funds will become a part of the Estate and will fund the New Value contribution obligations set forth herein at confirmation ***only in the event that*** RCCH is the successful bidder for the equity interests in the Reorganized Debtor. Additionally, these funds will only be available to, and become a part of, the Estate if a Confirmation Order confirming this Plan is entered and becomes a Final Order.

### B. Liquidation of Estate Property

The Debtor shall have the authority to retain such brokers, agents, counsel, or representatives as it deems necessary to market, lease and/or sell assets of the Reorganized Debtor.

### C. Management

The Plan will be implemented by the retention of the Debtor's existing management, CMS. This implementation will also include the management and disbursement of the funds infused by RCCH, or the Successful Bidder, if any, as set forth above and in accordance with the terms of this Plan.

### D. Disbursing Agent

The Reorganized Debtor shall act as the Disbursing Agent under the Plan.

### E. Documentation of Plan Implementation

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtor may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan. If the Debtor deems advisable, it may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

### F. New Obligations

Any Allowed Claims which are otherwise impaired herein, and which are paid in deferred

21

payments, shall be a New Obligation of the Reorganized Debtor under the terms described herein and completely replace any pre-confirmation obligations of the Debtor.

## VI. EFFECT OF CONFIRMATION.

Except as otherwise provided in the Plan or the Confirmation Order, Confirmation acts as a Discharge, effective as of Confirmation, of any and all debts of the Debtor that arose any time before the entry of the Confirmation Order including, but not limited to, all principal and all interest accrued thereon, pursuant to § 1141(d)(1) of the Bankruptcy Code. The Discharge shall be effective as to each Claim, regardless of whether a Proof of Claim thereon was filed, whether the Claim is an Allowed Claim, or whether the Holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtor dealt with in this Plan shall be considered New Obligations of the Debtor, and these New Obligations shall not be considered in default unless and until the Reorganized Debtor defaults on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtor. Once the Plan is confirmed, the only obligations of the Debtor shall be such New Obligations as provided for under the Plan.

## VII. OBJECTIONS TO AND ESTIMATIONS OF CLAIMS.

### A. Objections and Bar Date for Filing Objections.

As soon as practicable, but in no event later than 45 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules. Objections filed after such date will be barred.

### B. Settlement of Claims.

Settlement of any objection to a Claim not exceeding $10,000 shall be permitted on the eleventh (11th) day after notice of the settlement has been provided to the Debtor, the Creditors, the settling party, and other persons specifically requesting such notice, and if on such date there is no written objection filed, such settlement shall be deemed approved. In the event of a written objection to the settlement, the settlement must be approved by the Court on notice to the objecting

party.

**C.** **Estimation of Claims.**

For purposes of making distributions provided for under the Plan, all Claims objected to shall be estimated by the Disbursing Agent at an amount equal to (i) the amount, if any, determined by the Court pursuant to § 502(c) of the Bankruptcy Code as an estimate for distribution purposes; (ii) an amount agreed to between the Debtor and the Claimant; or, (iii) that amount set forth as an estimate in the Plan or Disclosure Statement. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim.

**D.** **Unclaimed Funds and Interest.**

Distribution to Claimants shall be mailed by the Reorganized Debtor to the Claimants at the address appearing on the master mailing matrix unless the Claimant provides the Reorganized Debtor with an alternative address. For a period of one year from the date that a distribution was to be made by the disbursing agent but has gone uncollected by the Claimant, the disbursing agent shall retain any distributions otherwise distributable hereunder which remain unclaimed or as to which the disbursing agent has not received documents required pursuant to the Plan. Thereafter, the unclaimed funds shall be deposited in the appropriate distribution account for distribution to other Claimants entitled to participate in such respective fund.

**VIII. NON-ALLOWANCE OF PENALTIES AND FINES.**

No distribution shall be made under this Plan on account of, and no Allowed Claim, whether Secured, Unsecured, Administrative, or Priority, shall include any fine, penalty, exemplary or punitive damages, late charges, default interest or other monetary charges relating to or arising from any default or breach by the Debtor, and any Claim on account thereof shall be deemed Disallowed, whether or not an objection was filed to it.

**IX. CLOSING OF CASE.**

Until this case is officially closed, the Reorganized Debtor will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. § 1930, as

amended. Pursuant to 11 U.S.C. § 1129(a)(12), all fees payable under § 1930 of Title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## X. MODIFICATION OF THE PLAN.

In addition to its modification rights under § 1127 of the Bankruptcy Code, the Debtor may amend or modify this Plan at any time prior to Confirmation without leave of the Court. The Debtor may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtor may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of this Plan.

## XI. JURISDICTION OF THE COURT.

The Court will retain jurisdiction until this Plan has been fully consummated for, including but not limited to, the following purposes:

1. The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtor to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's rights to object to or to re-examine the Claim in whole or in part.

2. To determine any Claims which are disputed by the Debtor, whether such objections are filed before or after Confirmation, to estimate any Un-liquidated or Contingent Claims pursuant to 11 U.S.C. § 502(c)(1) upon request of the Debtor or any holder of a Contingent or Un-liquidated Claim, and to make determination on any objection to such Claim.

3. To determine all questions and disputes regarding title to the assets of the Estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtor and any other party, including but not limited to, any rights of the Debtor to recover assets pursuant to the provisions of

the Bankruptcy Code.

4. The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan.

5. The modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6. To enforce and interpret the terms and conditions of this Plan.

7. The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8. The entry of an order concluding and terminating this case.

## XII. RETENTION AND ENFORCEMENT OF CLAIMS.

Pursuant to § 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any and all claims of the Debtor, except those claims specifically waived herein. Any retained causes of action include, but are not limited to, all avoidance actions, fraudulent conveyance actions, preference actions, and other claims and causes of action of every kind and nature whatsoever, arising before the Effective Date which have not been resolved or disposed of prior to the Effective Date, whether or not such claims or causes of action are specifically identified in the Disclosure Statement.

Any recovery obtained from retained causes of action shall become an additional asset of the Debtor, unless otherwise ordered by the Court, and shall be available for distribution in accordance with the terms of this Plan.

## XIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

The Debtor hereby expressly assumes any and all tenant leases in existence as of the Confirmation Date and all executory contracts listed in the Debtor's Schedules of Assets and Liabilities. Every other executory contract and/or unexpired lease of the Debtor not expressly assumed by this Plan is hereby rejected.

Claims under § 502(g) of the Code arising as a result of the rejection of executory contracts

or unexpired leases shall be filed no later than 30 days after the Confirmation Date.  Any such Claims not timely filed and served shall be Disallowed.

## XIV.   REVESTING.

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtor shall be vested with all the property of the Estate free and clear of all claims, liens, charges, and other interests of Creditors, arising prior to the Effective Date.  Upon the Effective Date, the Reorganized Debtor shall operate their business free of any restrictions.

DATED:  July 14, 2010.

POLSINELLI SHUGHART PC


By:_____
John J. Hebert
Mark W. Roth
Philip R. Rudd
Security Title Plaza
3636 N. Central Ave., Suite 1200
Phoenix, AZ  85012
*Attorneys for the Debtor*

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*")
on July 14, 2010, to:

U.S. TRUSTEE'S OFFICE                      Richard Lorenzen * rlorenzen@perkinscoie.com
230 N. 1st Avenue, Suite 204               PERKINS COIE BROWN & BAIN, P.A.
Phoenix, AZ  85003                         2901 N. Central Ave., Suite 2000
                                           Phoenix, AZ 85012-2788


By: ____*/s/  Cathie Bernales*____