Richard M. Lorenzen (#006787)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
RLorenzen@perkinscoie.com
Telephone: 602.351.8000
Facsimile: 602.648.7000

Counsel for U.S. Bank, N.A., as Trustee for the
Registered Holders of Merrill Lynch Mortgage
Trust 2006-C1, Commercial Mortgage Pass-
Through Certificates, Series 2006-C1

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| RCC NORTH, LLC, | Case No. 2:10-bk-11078-SSC |
| Debtor. | **DISCLOSURE STATEMENT RELATING TO US BANK'S PLAN OF REORGANIZATION** |

# I. INTRODUCTION

U.S. Bank, N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1 ("US Bank"), secured and unsecured creditor, hereby submits to the Court and creditors of the Debtor's estate the following "Disclosure Statement Relating to "US Bank's Plan of Reorganization"(the "Disclosure Statement"). This Disclosure Statement is submitted pursuant to 11 U.S.C.§ 1125.

11 U.S.C. § 1125(b) prohibits the solicitation of acceptances or rejections of a Plan of Reorganization unless such Plan is accompanied by a copy of the Disclosure Statement which has been approved by the Bankruptcy Court.

The purpose of this Disclosure Statement is to provide creditors and interested parties in this bankruptcy proceeding with such information as may reasonably be deemed sufficient to allow creditors and interested parties to make an informed decision regarding US Bank Plan of Reorganization Dated" (the "Plan").

Unless otherwise noted, those portions of the Plan and this Disclosure Statement providing factual information concerning the Debtor, its assets and liabilities, have been prepared from information submitted by the Debtor and its retained professionals.

This Disclosure Statement contains information that may influence your decision to accept or reject US Bank's proposed Plan. Please read this document with care.

The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent certified public accountant. For that reason, US Bank is not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy. To the extent practicable, the information has been prepared from the Debtor's Amended Disclosure Statement (DE 89).

This Disclosure Statement and the Plan will classify all creditors into Classes. The treatment of each Class of creditors will be set forth in this Disclosure Statement and in the Plan. You should carefully examine the treatment of the Class to which your Claim will be

assigned.

This Disclosure Statement requires approval by the Bankruptcy Court after notice and a hearing pursuant to 11 U.S.C. §1125(b). Once approved, the Disclosure Statement will be distributed with US Bank's proposed Plan for voting. Approval of the Disclosure Statement by the Bankruptcy Court does not constitute either certification or approval of US Bank's Plan by the Bankruptcy Court or that the Disclosure Statement is without any inaccuracy.

The Bankruptcy Court will confirm the Plan if the requirements of §1129 of the Bankruptcy Code are satisfied. The Bankruptcy Court must determine whether the Plan has been accepted by each impaired Class entitled to vote on the Plan. Impaired Classes entitled to vote on the Plan are those Classes of claims whose legal, equitable, or contractual rights are altered, as defined under §1124 of the Bankruptcy Code. An impaired Class of claims is deemed to have accepted the Plan if at least two-thirds (2/3) in amount of those claims who vote and more than one-half (1/2) in number of those claims who vote have accepted the Plan. An impaired Class of interests is deemed to have accepted the Plan if the Plan has been accepted by at least two-thirds (2/3) in amount of the allowed interests who vote on the Plan.

Even if each Class of creditors does not accept the Plan, the Plan can be confirmed under §1129(b) of the Bankruptcy Code, so long as one impaired Class of creditors accepts the Plan. This is referred to as the "cram down" provision of the Bankruptcy Code. The failure of each Class to accept the Plan could very well result in a conversion of this case to Chapter 7 or dismissal of the Chapter 11.

Only the votes of those creditors or interested parties whose ballots are timely received will be counted in determining whether a Class has accepted the Plan.

## II.     DEFINITIONS

The definitions set forth in Article I of the Plan apply in this Disclosure Statement except to the extent other definitions are set forth in this Disclosure Statement.

## III.    THE DEBTOR, BACKGROUND, AND EVENTS PRECIPITATING THE CHAPTER 11

### A.    Background

According to the Debtor:  (a) the Debtor is a Delaware limited liability company that was formed in February 2006; (b) the Debtor is authorized to do business in Arizona; (c) the Debtor's sole member is Raintree Corporate Center Holdings, LLC ("RCCH"); (d) the Debtor's managers are RCCH, Jennifer A. Schwartz and Victor A. Duva; and (e) Cavan Management Services, LLC ("CMS") is RCCH's sole manager.

The Debtor owns and operates two office buildings and the related corporate campuses known as Phase I and Phase II of the Raintree Corporate Center located north of the northeast corner of Loop 101 (Pima Freeway) and Raintree Drive, at 15333 North Pima Road and 15111 North Pima Road, respectively, in Scottsdale, Arizona (the "Property"). Each three-story building is approximately 150,000 square feet and they were built in 2002 through 2004.  The Property is managed by CMS, an affiliate of the Debtor.

The Debtor reports that Phase I of the Property is currently occupied by 28 tenants in approximately 93,087 square feet of the building.  Thus, Phase I of the Property is approximately 62.44% occupied.  The Debtor reports that Phase II of the Property is currently occupied by 4 tenants in approximately 59,297 square feet of the building.  Thus, Phase II of the Property is approximately 40% occupied.[1]

US Bank has asserted a claim against the Debtor, allegedly secured by the Property, in the principal amount of approximately $57.5 million. US Bank asserts that the amount of its claim as of the Petition Date is approximately $71,000,000.

US Bank has obtained an appraisal of the Property indicating that the value of the Property is approximately $27,100,000, as of January 28, 2010, and a stabilized value of the Property, on July 28, 2013, of $32,300,000. The Debtor does not dispute that the current

---

[1] Phase II of the Property was previously fully occupied by Pulte Homes.  However, in the Fall of 2009, Pulte Homes vacated the Property by exercising an early termination right in its lease and paying an early termination fee of approximately $2.1 million to the Debtor.  The Debtor previously delivered a portion of this fee to US Bank (the "Pulte Termination Fee").

value of the Property is $27,100,000.

Prior to the Debtor's bankruptcy filing, US Bank noticed a non-judicial foreclosure sale of the Property for April 16, 2010. The Debtor filed its voluntary bankruptcy petition in order to stay the foreclosure of the Property.

The Debtor has failed to make any payments to US Bank on this indebtedness since prior to August, 2009. In addition, the Debtor failed to make the property tax payment on the Properties in October, 2010, and US Bank was required to make such payment of approximately $435,000. Subsequently, the Court ordered the Debtor to obtain funds from a third-party source to cover the amount of these taxes, and the Debtor reports that it has obtained and is holding $435,000 as a tax deposit (the "Tax Deposit"). Prior to the filing of its bankruptcy petition, the Debtor also failed to pay various operating expenses associated with the Properties, thereby resulting in additional claims against the bankruptcy estate. Even though the Debtor was making no debt service payments or property tax payments following August, 2009, it was only able to accumulate approximately $469,000 during the fifteen (15) month period thereafter.

## B. Operations

During this case, the Debtor continued to receive income from tenants to pay for the ordinary and necessary operating expenses of the Property, as well as any necessary repairs, from such income. The Debtor and US Bank have entered into a stipulation for the Debtor's use of US Bank's asserted cash collateral pursuant to a budget, a copy of which is attached to the stipulation between the Debtor and US Bank (the "Budget"). The Budget reflects the Debtor's estimated revenues and expenses relating to the Property.

## C. Preferences and Fraudulent Conveyances

To the extent that a preference or fraudulent conveyance occurred before the bankruptcy filing, such transfer may be recoverable by the bankruptcy estate for the benefit of the estate under §§ 544, 547, or 548 of the Bankruptcy Code. To date, no complaints have been filed under any of these theories, and the Debtor states that it is not currently aware of

any causes of action for the recovery of preferences or fraudulent conveyances. To the extent any such claims exist, they will be assigned to US Bank. Any recovery that is obtained will be obtained for the benefit of US Bank.

## IV. SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

### A. Administrative Proceedings

The Debtor filed its Petition for Relief under Chapter 11 on April 15, 2010, and a first meeting of creditors was held on May 18, 2010.

### B. Retention of Professionals

The Debtor retained Polsinelli Shughart, P.C. ("PS") to act as its original bankruptcy counsel. The Court signed an Order approving the retention of PS on May 23, 2010.

The Debtor retained Highland Financial Consulting, LLC ("CRO") to act as its Chief Restructuring Officer. The Court signed an Order approving the retention of the CRO on June 23, 2010.

### C. Appointment of Unsecured Creditors Committee

The United States Trustee's Office filed a statement stating that, despite its efforts to contact unsecured creditors, it was unable to appoint a Committee of Unsecured Creditors.

### D. Motion and Stipulation and Use of Cash Collateral

The Debtor filed a motion to use the revenues generated by the Property, which US Bank asserts constitute its cash collateral, on April 27, 2010. Although US Bank initially filed an objection to the use of its asserted cash collateral, the Debtor and US Bank resolved US Bank's objections and entered into, and filed on May 7, 2010, a stipulation for the Debtor's use of the asserted cash collateral, through July 31, 2010. The Debtor and US Bank entered into further stipulations regarding the Debtor's use of asserted cash collateral.

### E. Operating Reports

The Debtor's monthly operating reports have generally been kept current and copies can be obtained from the Court's electronic docket.

### F.    Stay Relief Motion

On May 28, 2010, US Bank filed a motion seeking to terminate the automatic stay to allow it to foreclose on the Property. The Debtor has objected to the motion for stay relief. On July 7, 2010, the Court held a preliminary hearing on the motion for stay relief and continued such preliminary hearing to July 20, 2010. At the July 20th hearing, the Court ordered that the final hearing on stay relief would coincide with the confirmation hearing on Debtor's Plan.

### G.    Plans of Reorganization

On July 14, 2010, the Debtor filed its initial Plan of Reorganization and initial Disclosure Statement. On September 2, 2010, the Court held a hearing regarding approval of the initial Disclosure Statement and required the Debtor to make certain amendments relating to the treatment of US Bank's claim in the event that US Bank makes the § 1111(b)(2) election. The amended Disclosure Statement and the amended Plan were filed on October 12, 2010.

On October 18, 2010, the Bankruptcy Court entered its order approving the adequacy of the Debtor's Amended Disclosure Statement, which was thereafter submitted to creditors for a vote together with the Debtor's Amended Plan.  On November 30, 2010, US Bank filed its objection to confirmation of the Debtor's Amended Plan.  On February 23, 2011, the Court conducted a hearing to consider legal arguments raised by US Bank in its objection. At that hearing, the Court sustained certain of US Bank's objections, which included a ruling that Classes 3 and 4 under the Debtor's Amended Plan are administrative claims that are not entitled to vote, but determined that the Debtor would be permitted to proceed forward with a trial, seeking confirmation of the Debtor's Amended Plan.  A pretrial conference relating to that trial has been scheduled for May 18, 2011 in this case.

The exclusive period under the Bankruptcy Code for the Debtor to file and seek approval of a plan of reorganization expired in December, 2010.  Accordingly, US Bank has filed this Disclosure Statement and the related Plan.

## V.  DESCRIPTION OF ASSETS AND LIABILITIES OF THE DEBTORS

### A.  Assets

The values ascribed to the Debtor's assets below are the Debtor's contentions:

1. **Real Property –** $27.1 million.

2. **Bank Accounts –** Approximately $93,000 as of the Petition Date. The Debtor has accumulated, and continues to accumulate, net cash from operations of the Property since the Petition Date. The current amount of cash held by the Debtor is reflected in the most recent Monthly Operating Report filed by the Debtor.

3. **Other Accounts and Deposits –** US Bank received approximately $1,500,000 in cash that the Debtor delivered to US Bank from the Pulte Termination Fee. The Debtor also has an interest in certain cash retainers held by professionals that provided services to the Debtor pre-petition. US Bank asserts that these funds constitute part of its collateral. The Debtor disputes such assertion and asserts that these funds should either be returned to the Debtor or applied to US Bank's claim.

4. **Accounts Receivable –** The Debtor owns certain accounts receivable from tenants for unpaid rent in the amount of approximately $114,203, and a receivable from a related entity, Cavan Investment Capital ("CIC"), in the amount of approximately $836,964. US Bank asserts that these accounts receivable constitute part of its collateral. The Debtor does not dispute that the unpaid rent receivables are part of US Bank's collateral. The Debtor asserts that the CIC receivable is uncollectible and valueless.

5. **Personal Property –** The Debtor owns certain personal property, consisting primarily of office equipment, model unit furniture, fixtures and computer software with an estimated book value of approximately $411,372. US Bank asserts that this personal property constitutes part of its collateral. The Debtor asserts that the fair market value of the personal property is, in context, negligible.

### B.  Liabilities

The following is an overview of what the Debtor contends are its known liabilities.

### 1. Priority Claims

The Debtor reports that it is not aware of the existence of any pre-petition priority claims.

### 2. Secured Claims

**a.** The Debtor's schedules list US Bank as a secured creditor with a first position lien on the Property in the amount of approximately $57,495,000. US Bank asserts that the amount owing on its secured claim is approximately $71,000,000 as of the Petition Date. The Debtor disputes this assertion.

**b.** The Debtor's schedules list the law firm of Fennemore Craig as a secured creditor with a claim of approximately $26,439 secured by a cash retainer held by Fennemore Craig in the amount of $30,000.

**c.** The Debtor's schedules list the accounting firm of Larson Allen as a secured creditor with a claim of approximately $3,941.56 secured by a cash retainer held by Larson Allen in the amount of $25,000.

### 3. Unsecured Claims

According to the Debtor's Schedules of Assets and Liabilities, the total amount of unsecured claims, not including any deficiency claims of secured creditors, is $484,970.31. This amount includes tenant security deposits in the amount of approximately $212,592.86, claims owing to CMS in the total amount of $75,000, and a claim for reimbursement of tenant improvement costs, held by Cylon (dba Eye Level Holdings) in the amount of approximately $130,346. Because the Debtor's leases are to be assumed under the US Bank Plan, the claims of Eye Level Holdings and the claims for tenant security deposits are treated as administrative expenses.

### C. Administrative Expenses

The Debtor's other administrative expenses consist of the fees and costs of attorneys and other professionals necessary to the Debtor's operations, bankruptcy case, and plan of reorganization. The fees and costs of these professionals will not be precisely known until

the Bankruptcy Case is completed, and Court approval has been obtained. However, the Debtor's professionals anticipate that either (a) the retainers they presently have will be sufficient to cover the services they have rendered, and will render, in the Bankruptcy Case, or (b) for those professionals that do not have retainers and will be paid by some other manner, their projected anticipated fees and costs for their services will be commensurate with their historical fees and costs incurred by the Debtor.

The Debtor's bankruptcy counsel is PS. PS is currently in possession of a retainer in the amount of $100,000. PS anticipates its fees will be less than the amount of the retainer. However, to the extent that PS's fees and costs exceed the amount of the retainer, PS's fees and costs will constitute administrative claims against the Debtor's Estate to the extent allowed by the Court.

## VI. PLAN SUMMARY

The following statements concerning the Plan are merely a summary of the Plan and are not complete. The statements are qualified entirely by express reference to the Plan. Creditors are urged to consult with counsel or each other in order to understand the Plan fully. The Plan is complete, inasmuch as it proposes a legally binding agreement, and an intelligent judgment cannot be made without reading it in full. Only the secured and unsecured claims of US Bank are impaired under the US Bank Plan. Thus, only those two classes will have the right to vote on the US Bank Plan of reorganization, as set forth herein.

### A. CLASSIFICATION OF CLAIMS AND INTERESTS.

#### 1. Class 1: Priority Claims

    **a.** Class 1-A consists of Allowed Priority Claims under 11 U.S.C. § 503 and § 507(a)(2) (Administrative Claims).

      **b.**    Class 1-B consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(3) (Wage Claims).

      **c.**    Class 1-C consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8) (Tax Claims).

**2.**    **Class 2: Security Claims**

      **a.**    Class 2-A consists of the Allowed Secured Claim of US Bank.

      **b.**    Class 2-B consists of the Allowed Secured Claim of Maricopa County for real property taxes.

      **c.**    Class 2-C consists of the Allowed Secured Claim of Fennemore Craig.

      **d.**    Class 2-D consists of the Allowed Secured Claim of Larson Allen.

**3.**    **Class 3: Unsecured Claims (other than US Bank)**

Class 3 consists of the Allowed Unsecured Claims of Creditors other than US Bank.

**4.**    **Class 4: US Bank Unsecured Claim**

Class 4 consists of US Bank's Allowed Unsecured Claim.

**5.**    **Class 5: Interest Holders**

Class 5 consists of all Allowed Interests of Interest Holders.

**B.**    **IMPAIRMENT OF CLASSES.**

Classes 1-A, 1-B, 1-C, 2-B, 2-C, 2-D, and 5 are unimpaired under the Plan. Classes 2-A and 4 are Impaired, as the term is defined in 11 U.S.C. § 1124.

**C.**    **TREATMENT OF CLASSES.**

**1.**    **Class I: Priority Claims**

      **a.**    **Class 1-A: Administrative Claims**

This Class consists of Allowed Priority Claims under 11 U.S.C. §§ 503 and 507(a)(2) – administrative priority claims, including the Eye Level Holdings Claim and Tenant deposit claims. Unless Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, on or before the Effective Date, as set forth below with regard to Tenant deposit claims, or as the same are

Allowed and ordered paid by the Court. Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as it is allowed by the Court according to the terms of this Class. This Class is not impaired.

US Bank shall retain the right and ability to determine whether and to what extent a tenant is entitled to the return of its security deposit pursuant to the terms of its assumed lease and applicable state law. However, notwithstanding anything to the contrary in the lease or under applicable law, valid and enforceable tenant security deposits will be paid to tenants within ninety (90) days of the later of either (a) the date that US Bank determines the appropriate amount of the security deposit to be returned or (b) the date the tenant vacates its premises following expiration of the term of the lease.

### b. Class 1-B: Wage Claims

This Class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(4) – wage claims.

As provided in 11 U.S.C. § 1129(a)(9)(B), unless Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-B shall be paid in full, in cash, on or before the Effective Date. The Debtor reports that no claims exist under this Class. Any Class 1-B Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. This Class is not impaired.

### c. Class 1-C: Tax Claims

This Class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8) – tax Claims which are not otherwise treated as secured claims herein. As provided in 11 U.S.C. § 1129(a)(9)(C), unless Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-C shall be paid in full, in cash, on or before thirty (30) days following the Effective Date, or, at US Bank's option, such Allowed Claims shall be paid, on account of such Allowed Claim, deferred cash payments, over a period not exceeding six years after the date of assessment of such Claim, of a value, as of

the Effective Date of the Plan, equal to the allowed amount of such Claim. Any Class 1-C Claims not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. This Class is not impaired.

### 2. Class 2: Secured Claims

#### a. Class 2-A: Allowed Secured Claims of US Bank

This Class consists of the Allowed Secured Claim of US Bank. This Class is impaired. US Bank's secured claim will be treated as follows:

Upon the Confirmation Date, the automatic stay of 11 U.S.C. § 362, and all other stays and injunctions shall be vacated and annulled as to US Bank, to permit US Bank to seek and obtain appointment of a receiver for the Property (the "Receiver"), and to exercise all of its rights with regard to the Property and other collateral, including foreclosure, as provided under the Loan Documents, at law, in equity, or otherwise. The Confirmation Order will specifically provide that US Bank is entitled, wtihout further notice or an opportunity for a hearing, to the appointment of the Receiver, in Maricopa County Superior Court, or any other court of competent jurisdiction.

Notwithstanding the foregoing, upon the Confirmation Date, title to any and all personal property collateral for the US Bank Loan, including without limitation, all cash collateral, accounts receivable, reserves, insurance proceeds, condemnation awards, tax refunds or credits, rights, agreements, intangibles, and any other personal property securing the US Bank Loan will be transferred to US Bank free and clear of any liens, claims or other encumbrances of any kind or nature whatsoever. Within seven (7) days following the Confirmation Date, the Debtor shall deliver to US Bank, or its designated representative, any and all records identifying such personal property and the location of such personal property, together with all cash, and the contents of all bank or other accounts containing any US Bank collateral, and shall make all of its other property available to US Bank, or its designee.

The Debtor has disputed that certain of the funds held by US Bank, including the Pulte Termination Fee, are not subject to a lien or security interest in favor of US Bank. US

Bank contends that all such funds are, in fact, subject to a valid, first priority security interest in its favor. To the extent that any such funds are subject to such a security interest, US Bank will receive such funds, as set forth above, on account of its secured claim against this bankruptcy estate. To the extent that any such funds are not subject to such a security interest, US Bank shall receive such funds in partial satisfaction of its unsecured, deficiency claim against this estate, under Class 4.

Notwithstanding anything to the contrary set forth above, US Bank shall also have the sole and unfettered right to reject the receipt of any collateral that it determines in its sole and absolute discretion, that it does not wish to own. Any such rejected collateral shall remain with the reorganized Debtor.

Upon the Confirmation Date, the Debtor and its insiders, management, owner, and representatives shall (a) be enjoined and prohibited from transferring any money or other property to any person or party other than US Bank or its designee, except as authorized in writing by US Bank, in its sole and absolute discretion, or taking any action to interfere with or limit the appointment or the management and operation of the Property by the Receiver; and (b) the Debtor and other such parties shall reasonably cooperate with US Bank and the Receiver to effectuate a smooth and orderly transition for management of the Property, including without limitation by making promptly available to the Receiver, all original leases, keys for the Property, security codes, contracts, and other materials necessary for operation of the Property in the same manner as it was operated by the Debtor during this bankruptcy case.

US Bank shall pay Allowed Unsecured Claims in full from US Bank's cash collateral within thirty (30) days following the Effective Date.

### b. Class 2-B: Allowed Secured Claim of Maricopa County

This Class consists of the Allowed Secured Claim of Maricopa County, Arizona ("Maricopa County"), if any, that is secured by a tax lien on the Real Property. Property Taxes are current and will be kept current through plan confirmation. Accordingly, there are

not anticipated to be any such claims. However, to the extent that such claims exist, they will be paid in full, with interest, as of the Effective Date. This Class is unimpaired.

### c.    Class 2-C:  Allowed Secured Claim of Fennemore Craig

This Class consists of the Allowed Secured Claim of Fennemore Craig in the amount of $26,439. This Class is unimpaired.

Fennemore Craig's Allowed Secured Claim shall be paid in full from its retainer, together with any interest provided for in the agreement between the parties, upon the Effective Date, and the balance of the retainer shall be paid to US Bank or its designee within ten (10) days thereafter. The balance of the retainer shall be included among the property constituting US Bank's collateral.

### d.    Class 2-D:  Allowed Secured Claim of Larson Allen

This Class consists of the Allowed Secured Claim of Larson Allen in the amount of $3,941.56. This Class is unimpaired.

Larson Allen's Allowed Secured Claim shall be paid in full from its retainer, together with any interest provided for in the agreement between the parties, upon the Effective Date, and the balance of the retainer shall be paid to US Bank or its designee within ten (10) days thereafter. The balance of the retainer shall be included among the property constituting US Bank's collateral.

### 3.    Class 3:  General Unsecured Claims (other than US Bank)

Class 3 consists of all Allowed Unsecured Claims of Creditors other than US Bank. General Unsecured Claims in this Class shall be paid in full within thirty (30) days of the Effective Date. Class 3 is unimpaired.

### 4.    Class 4:  US Bank's Unsecured Claim

Class 4 consists of US Bank's Allowed Unsecured Claim for its Deficiency. This Class is impaired.

On account of this Claim, US Bank shall receive any property of the Debtor's estate not subject to a valid and enforceable lien or security interest in favor of US Bank, free and

clear of all liens, claims, or other encumbrances of any kind or nature whatsoever. Such property includes, without limitation, any amounts held by US Bank that do not constitute its collateral, the Tax Deposit, all avoidance claims, including those arising under § 544, 547, or 548 of the Bankruptcy Code (with regard to which, the order confirming the US Bank Plan shall specifically provide that US Bank shall have standing to pursue such claims in its own name). The Debtor shall transfer any and all such assets to US Bank within seven (7) days following the entry of the order confirming the US Bank Plan.

Notwithstanding anything to the contrary set forth above, US Bank shall also have the sole and unfettered right to reject the receipt of any transferred asset that it determines in its sole and absolute discretion, that it does not wish to own.

### 5. Class 5: Interest Holders

Class 5 consists of all Allowed Interests of the Interest Holder in the Debtor. The Debtor's Interest Holder is RCCH. RCCH will retain its equity interests in the Debtor. This Class is unimpaired.

### D. MEANS FOR EXECUTING THE PLAN.

#### 1. Funding

The Plan will be funded by US Bank's collateral and other assets, as set forth above.

#### 2. Management

The Plan will be implemented by US Bank's the retention of a new property manager.

#### 3. Disbursing Agent

US Bank or its designee shall act as the Disbursing Agent under the Plan.

#### 4. Distributions to Creditors.

The provisions of the Plan govern distributions to creditors and the resolution of disputed and contingent claims. Certain of those provisions are summarized below.

##### a. Distributions Generally.

Distributions under the Plan will be made as provided in the Plan. Distributions to be made by US Bank under the Plan ordinarily will be made by check drawn on a domestic

bank. Withholding taxes and other amounts required to be withheld under applicable law will be deducted from distributions. Distributions to creditors pursuant to the Plan ordinarily will be delivered by regular mail, postage prepaid, in an envelope addressed as directed in a request served on US Bank as provided in the Plan, but if no such request is made, at the address shown in Debtor's schedules, as they may from time to time be amended, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

**b.      Undeliverable or Unclaimed Distributions.**

For a period of 180 days after any particular distribution is made pursuant to the US Bank Plan, distributions that are unclaimed, including (a) checks that have been returned as undeliverable without a proper forwarding address and (b) checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same, shall be distributed to the holders of Allowed Claims entitled thereto upon presentment to US Bank of satisfactory proof of entitlement. US Bank shall make a reasonable effort to ascertain the correct mailing address from information generally available to the public for each holder of an Allowed Claim whose check or other property cannot be mailed or delivered because of the absence of a proper address or whose check has been returned without a proper forwarding address. On the first day after the expiration of such 180 day period (i) holders of Allowed Claims previously entitled to such undeliverable or unclaimed distribution shall no longer be entitled to such distribution and (ii) such Claims shall be deemed disallowed for all purposes, including any future distributions. All disbursements made under the Plan that remain unclaimed shall become property of US Bank.

**c.      Time Bar for Cashing Distribution Checks.**

US Bank may (but shall not be obligated to) stop payment on any check issued by it in respect of Allowed Claims if such check is not negotiated within 60 days after the date of issuance thereof. Request for reissuance of any check shall be made to US Bank in accordance with the Plan, by the holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the 180 day period set forth in the Plan. After such

date, the holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under the US Bank Plan on account of such voided check or such Claim.

### d. Limitations on Amending Claims.

Except as otherwise provided in the Plan, after the Confirmation Date, a proof of claim may be amended by the holder of such Claim solely to decrease, but not to increase, the amount of such Claim.

### 5. Documentation of Plan Implementation

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, US Bank may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan.

## VII. EFFECT OF CONFIRMATION.

Except as otherwise provided in the Plan or the Confirmation Order, Confirmation acts as a Discharge, effective as of Confirmation, of any and all debts of the Debtor that arose any time before the entry of the Confirmation Order including, but not limited to, all principal and all interest accrued thereon, pursuant to §1141(d)(1) of the Bankruptcy Code. The Discharge shall be effective as to each Claim, regardless of whether a Proof of Claim thereon was filed, whether the Claim is an Allowed Claim, or whether the Holder thereof votes to accept the Plan. Such discharge shall not affect the liability of CMS under its guarantee of the US Bank Loan, or any other obligor on any indebtedness other than the Debtor.

## VIII. LIQUIDATION ANALYSIS.

If the Plan is not confirmed, and the Debtor's assets were liquidated instead, it is

likely that only US Bank would recover anything from such liquidation, and all other creditors (other than Fennemore Craig and Larson Allen) will not recover anything from the Debtor or the Debtor's Estate.

US Bank's Plan provides a better recovery than such a liquidation. Allowed Unsecured Creditors will be paid in full.

Thus, the US Bank Plan provides for a better recovery to creditors than a liquidation.

## IX. FEDERAL TAX CONSEQUENCES OF THE PLAN.

**CIRCULAR 230 NOTICE: WE MUST INFORM YOU THAT TO ENSURE COMPLIANCE WITH THE REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, ANY FEDERAL TAX ADVICE CONTAINED IN THIS DOCUMENT RELATING TO FEDERAL TAXES, WAS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND IT CANNOT BE USED OR RELIED UPON, FOR THE PURPOSE OF AVOIDING TAX RELATED PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAW. UNDER THESE RULES, A TAXPAYER MAY RELY ON PROFESSIONAL ADVICE TO AVOID FEDERAL TAX PENALTIES ONLY IF THAT ADVICE IS REFLECTED IN A COMPREHENSIVE TAX OPINION THAT CONFORMS TO STRINGENT REQUIREMENTS UNDER FEDERAL LAW. THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE DEBTOR SOLICITING ACCEPTANCES OF THE PLAN THROUGH THIS DISCLOSURE STATEMENT.**

### A. Scope of Discussion.

The following discussion summarizes in general terms certain material federal income tax consequences of the implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice. This summary does not address the federal income tax consequences of the Plan to holders of priority claims or of secured claims, nor does it address any state, local or foreign tax matters or the federal income tax consequences

to certain types of creditors (including financial institutions, life insurance companies, tax exempt organizations and foreign taxpayers) to which special rules may apply. No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan. US Bank is not making any representations regarding the particular tax consequences of confirmation and consummation of the Plan as to creditors or Interest holders, nor is US Bank or its professionals rendering any form of legal opinion or tax advice as to such tax consequences. The tax laws applicable to corporations in bankruptcy are complex and are subject to significant uncertainties. Each creditor and shareholder is urged to consult his, her or its own tax advisor as to the consequences of the Plan under federal and applicable state, local and foreign tax laws. Accordingly, the following summary of federal income tax consequences of the Plan is for informational purposes only and should not be construed as tax advice.

### B. Tax Consequences to the Reorganized Debtor.

RCC is a limited liability company. As such the Debtor is generally not subject to federal income tax. Instead, Debtor's owners are subject to federal and state income taxes on their income tax return on any income or losses generated by the Debtor.

### 1. Cancellation of Debt and Reduction of Tax Attributes.

In general, absent an exception, a Debtor will realize and recognize cancellation of debt ("COD") income upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of COD income, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b) the sum of (x) the amount of cash paid, and (y) the fair market value of any new consideration given in satisfaction of such indebtedness.

A Debtor will not, however, be required to include any amount of COD income in gross income if the debtor is under the jurisdiction of a court in a case under Chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding. Instead, as a consequence of such exclusion, a debtor must reduce its tax attributes by the amount of

COD income that it excluded from gross income under Section 108 of the Internal Revenue Code. In general, tax attributes will be reduced in the following order: (1) net operating losses; (2) general business credits; (3) minimum tax credits; (4) capital loss carry forwards; (5) tax basis in assets; (6) passive activity losses and credits (7) and foreign tax credits. A debtor with COD income may elect first to reduce the basis of its depreciable assets under section 108(b)(5) of the Internal Revenue Code. Because the Plan provides that holders of Allowed Unsecured Claims will receive cash payments on account of their Claims, the amount of COD income, and accordingly the amount of tax attributes required to be reduced, will depend on the amount of those payments. Because all Claims will not be fully paid under the Plan, COD income will be realized by the Reorganized Debtor on the Effective Date of the Plan.

## C. Tax Consequences to Holders of General Unsecured Claims.

Pursuant to the Plan, holders of Allowed Unsecured Claims will receive one or more Cash distributions in full satisfaction of their Claims.

### 1. Gain or Loss.

In connection with the implementation of the Plan, each holder of an Allowed Unsecured Claim generally will recognize gain or loss for federal income tax purposes. The timing and amount of that gain or loss will depend upon a number of factors, including whether the holder reports income as an accrual basis taxpayer or as a cash basis taxpayer, whether the holder will receive multiple distributions pursuant to the Plan and whether the Reorganized Debtor's obligation to make payments will be treated as a new debt obligation for federal income purposes.

In addition, the character of any gain or loss recognized by a creditor as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which the creditor's claim arose constitutes a capital asset in the hands of the creditor, whether the obligation from which the claim arose has been held for more than one year, the allocation of

any distributions received between principal and unpaid accrued interest, whether and to what extent the creditor has previously claimed a bad debt deduction, and the extent (if any) to which interest may be imputed where multiple distributions are received

## X.  OBJECTIONS TO AND ESTIMATIONS OF CLAIMS.

### A.  Objections and Bar Date for Filing Objections.

As soon as practicable, but in no event later than 30 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules.  Objections filed after such date will be barred.

### B.  Settlement of Claims.

US Bank shall have the authority to settle with any party, and to pay such party the agreed amount of any such settlement with no court or other approval.

### C.  Estimation of Claims.

For purposes of making distributions provided for under the Plan, all Claims objected to shall be estimated by the Disbursing Agent at an amount equal to (i) the amount, if any, determined by the Court pursuant to §502(c) of the Bankruptcy Code as an estimate for distribution purposes; (ii) an amount agreed to between US Bank and the Claimant; or, (iii) that amount set forth as an estimate in the Plan or Disclosure Statement. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim.

## XI.  CLOSING OF CASE.

Until these cases are officially closed, the Reorganized Debtor will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. §1930, as amended. Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under §1930 of Title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## XII.  MODIFICATION OF THE PLAN.

In addition to its modification rights under §1127 of the Bankruptcy Code, US Bank may amend or modify the Plan at any time prior to Confirmation without leave of the Court. US Bank may propose amendments and/or modifications of the Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, US Bank may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of the Plan.

## XIII.  JURISDICTION OF THE COURT.

The Court will retain jurisdiction until the Plan has been fully consummated for, including but not limited to, the following purposes:

1. The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure US Bank to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of US Bank's rights to object to or to re-examine the Claim in whole or in part.

2. To determine any Claims which are disputed by US Bank, whether such objections are filed before or after Confirmation, to estimate any Un-liquidated or Contingent Claims pursuant to 11 U.S.C. § 502(c)(1) upon request of US Bank or any holder of a Contingent or Un-liquidated Claim, and to make determination on any objection to such Claim.

3. To determine all questions and disputes regarding title to the assets of the Estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between US Bank and any other party relating to claims against or assets of this estate, including but not limited to, any rights of US Bank to recover assets pursuant to the provisions of the Bankruptcy Code.

4.    The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in the US Bank Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

5.    The modification of the US Bank Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6.    To enforce and interpret the terms and conditions of the Plan.

7.    The entry of an order, including injunctions, necessary to enforce the title, rights and powers of US Bank, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8.    The entry of an order concluding and terminating this case.

## XIV.  RETENTION AND ENFORCEMENT OF CLAIMS.

Pursuant to §1123(b)(3) of the Bankruptcy Code, US Bank shall receive and may enforce any and all claims of the Debtor, except those claims, if any, specifically waived herein.  Any retained causes of action include, but are not limited to, all avoidance actions, fraudulent conveyance actions, preference actions, and other claims and causes of action of every kind and nature whatsoever, arising before the Effective Date which have not been resolved or disposed of prior to the Effective Date, whether or not such claims or causes of action are specifically identified in the Disclosure Statement.

Any recovery obtained from retained causes of action shall become an additional asset of US Bank.

## XV.  EXECUTORY CONTRACTS.

Prior to completion of the confirmation hearing on the US Bank Plan, US Bank shall give not less than fourteen (14) days written notice to any contracting party of its intent to reject any lease or executory contract listed on Debtor's schedules of Assets and Liabilities (DE 27) (the "Schedules").  All leases and executory contracts listed therein for which US Bank has not given such a notice, shall be assumed as of the Effective Date.  Every executory contract and/or unexpired lease of the Debtor not listed on the Schedules, or

expressly assumed by the Plan is hereby rejected.

Claims under § 502(g) of the Code arising as a result of the rejection of executory contracts or unexpired leases shall be filed no later than 30 days after the Confirmation Date. Such claims shall be subject to objection for thirty (30) days. Any such Claims not timely filed and served shall be Disallowed.

## XVI.      REVESTING.

Upon the Effective Date, the Reorganized Debtor shall operate its business free of any restrictions, except as set forth in the Plan.

## XVII.      DISCLAIMER.

Court approval of this Disclosure Statement and the accompanying Plan of Reorganization, is not a certification of the accuracy of the contents thereof. Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the US Bank Plan should be approved or disapproved.

## XVIII.      RISKS.

US Bank is unaware of material risks of the US Bank Plan. US Bank has reviewed the Debtor's Disclosure Statement, the Schedules, the claims register, and Debtor's operating reports. It appears from those documents that US Bank's cash collateral available for payment to unsecured creditors is significantly greater than the amount of such claims.

## XIX.  PROPONENT'S RECOMMENDATION/ALTERNATIVES TO THE PLAN.

US Bank intends to vote its impaired classes in favor the US Bank Plan.

Dismissal or conversion of this case would result in the foreclosure of the Property by US Bank. In such a case, Unsecured Creditors will receive nothing on account of their claims.

. . .

. . .

. . .

Dated:  March 10, 2011

**PERKINS COIE** LLP

By:  /s/ Richard M. Lorenzen (#006787)
      Richard M. Lorenzen
      2901 N. Central Avenue, Suite 2000
      Phoenix, AZ  85012-2788

Counsel for U.S. Bank, N.A., as Trustee for
the Registered Holders of Merrill Lynch
Mortgage Trust 2006-C1, Commercial
Mortgage Pass-Through Certificates, Series
2006-C1

ORIGINAL electronically filed and
COPY served via E-mail and First Class Mail
on March 10, 2011, to:

**UNITED STATES TRUSTEE**
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

**RCC NORTH LLC**
15333 North Pima Road, Suite 305
Scottsdale, AZ 85260
Debtor

Philip R. Rudd
**POLSINELLI SHUGHART PC**
3636 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
prudd@polsinelli.com
Counsel for Debtor

/s/ Kathryn Hardy
LEGAL20359567.2